THE TRENTON BANKING COMPANY, Appellant, *v.* ALEXANDER DUNCAN, Respondent.

In the absence of fraud, a judgment takes effect only on the actual interest in land which the judgment debtor has at the time of the recovery of the judgment.

The title therefore of a grantee of the judgment debtor, by deed executed before the entry of judgment, although unrecorded, takes precedence of the judgment.

The fact that such grantee has not recorded his deed creates no equity in favor of the judgment debtor.

*It seems*, the principle that a party who has a title to real property may, by his conduct in inducing others to deal with it without informing them of his claim, debar himself from asserting his title, applies to protect creditors who have given credit upon the faith of the apparent ownership of lands in possession of the debtor against a secret unrecorded conveyance, fraudulently concealed by the grantee, he having knowledge that the debtor is holding himself out as owner and is gaining credit thereby.

To authorize, however, the finding of an estoppel *in pais* against the legal owner of land, there must be either actual fraud, or fault or negligence equivalent to fraud on his part. The party setting up the estoppel must also be free from the imputation of *laches* in acting upon the belief of ownership.

Defendant was formerly a member of the firm of D. S. & Co., bankers; the firm owned certain real estate, including the banking-house occupied by it the title to which was in the three individual members of the firm. Defendant retired from the firm in 1862; the fact was announced in a circular accompanied by a statement, signed by the defendant, to the effect that he had withdrawn no part of his capital, but had made it over to his two sons, who were then members of the firm. The business was thereafter continued in the same firm name, in 1868 defendant purchased said real estate for a good and adequate consideration, receiving conveyances thereof, subject to certain mortgages thereon, and subsequently the firm occupied the real estate under a written lease, which specified no term. Defendant's deed was not put on record until July 26, 1875. During that month the firm incurred an indebtedness to plaintiff and soon after failed. At that time but one of the three original partners remained a member of the firm. Plaintiff, after recovery of judgment and return of execution unsatisfied, brought this action to have the real estate adjudged subject to the lien of plaintiff's judgment; the court found that when plaintiff became a creditor of the firm it was generally supposed that the bank building belonged to the firm; that plaintiff so believed and continued his dealings under that belief. The court refused to find, and there was no proof from which an inference necessarily followed, that defendant withheld the deed from the record for the purpose of avoiding a disclosure of the transfer, and there was no finding that the firm thereafter, with the knowledge of defendant, held out to the public that the real estate was firm property. Plaintiff, when its dealings with the firm commenced, made no inquiry as to the ownership of the property. *Held*, that plaintiff was not entitled to recover; 1st. Because of its *laches* in not making inquiry and examining the record to ascertain in whom the actual title was vested. 2d. Because of absence of fraud, or clear evidence of knowledge on the part of defendant of circumstances which called upon him to put the deed on record; also, that

assuming D. S. & Co. held themselves out as owners, or were guilty of fraud, defendant could not be charged with the consequences in the absence of knowledge on his part.

*Wendell* v. *Van Rensselaer* (1 Johns. Ch. 344), *Storrs* v. *Barker* (6 id. 168), *Nicholson* v. *Hooper* (4 My. & Cr. 186), distinguished.

(Argued June 7, 1881; decided October 4, 1881.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made April 7, 1881, which affirmed a judgment in favor of defendant, entered upon a decision of the court on trial at Special Term.

This action was brought to set aside certain conveyances of real estate made to defendant by certain members of the firm of Duncan, Sherman & Co., and that the lands be adjudged subject to the lien of a judgment obtained by plaintiff against the members of a firm for a firm indebtedness, execution whereon had been returned unsatisfied.

The lands in question were the bank building and premises lately occupied by said firm, situate on Nassau street, New York city, and another lot situate on Pine street in that city.

The material facts are stated in the opinion.

*D. D. Lord* for appellant. The continued occupation by Duncan, Sherman & Co., and the treatment of the banking house indicated that they owned it. (*Hildreth* v. *Sands*, 2 Johns. Ch. 36, 54.) Real estate, when belonging to a partnership, is always held by the partners as tenants in common. (Collyer on Partnership, § 133; *Hoxie* v. *Carr*, 1 Sumner; Collyer on Partnership [3d Am. ed.], 119, note 3, § 135; 1 Harper's [S. C.] Equity, 25.) The responsibility of individual partners is as much a ground of credit as capital actually contributed. (*Kirby* v. *Schoonmaker*, 3 Barb. Ch. 49; *Pendleton* v. *Hughes*, 65 Barb. 136.) Defendant is estopped from setting up his title as against plaintiffs, who have been misled by his concealment of it. (*Demyer* v. *Souzer*, 6 Wend. 436; *Dezell* v. *Odell*, 3 Hill, 215, 221; *Otis* v. *Sill*, 3 Barb. 103; *Rigney* v. *Smith*, 39 id.

388; *Thomas* v. *Blanchard*, 4 Comst. 303; *Sammis* v. *Mc-Laughlin*, 35 N. Y. 647.) The rule of estoppel makes no distinction between real and personal property. (*Corkhill* v. *Landers*, 44 Barb. 214, 228; *Wendell* v. *Van Rensselaer*, 1 Johns. Ch. 344; *Higenbotam* v. *Burnet*, 5 id. 184; *Town, etc.* v. *Needham*, 3 Paige, 545.) Neither direct representations nor express or actual representations of any kind are required for estoppel; it is enough if the party has concealed his rights, or if, by any sort of conduct, he has induced the erroneous belief upon which the other has acted. (1 Greenl. on Ev., § 207; *Dezell* v. *Odell*, 3 Hill, 215.) Although estoppel is on the ground of fraud in the party estopped, such fraud is not necessarily a moral fraud or conduct instigated by bad motives. (*Wendell* v. *Van Rensselaer*, 1 Johns. Ch. 344; *Storrs* v. *Barker*, 6 id. 163; *Dezell* v. *Odell*, 3 Hill, 215; *M. & T. Bk.* v. *Hazard*, 30 N. Y. 226.) It was error to hold that the only ground on which a creditor by judgment could set aside a deed was as fraudulent in its inception; and that defendant's title was indisputable, because he had paid a full equivalent for the property. (*Savage* v. *Murphy*, 34 Wend. 508; *Hildreth* v. *Sands*, 2 Johns. Ch. 35, 48; *Garlinghouse* v. *Whitwell*, 51 Barb. 208.) An owner of property gives another a prior right to it, by inducing him, directly or indirectly, and either by act or omission, to misunderstand the existence or the character of his rights. (*Pendleton* v. *Hughes*, 65 Barb. 136, 144; *Rigney* v. *Smith*, 39 Barb. 383; *Savage* v. *Murphy*, 34 N. Y. 508; *Corkhill* v. *Landers*, 44 Barb. 218, 228.) The effect of omitting to record conveyances does not inure to the benefit of subsequent grantees alone, but is available by judgment creditors also. (*Thomas* v. *Kelsey*, 30 Barb. 275.) If, notwithstanding defendant's conduct in relation to the banking-house, the plaintiffs are affected by the constructive notice of the record title, this notice does not affect their right to the one-third of the banking-house, and to all the annex standing in the name of Wm. Butler Duncan. (*Pendleton* v. *Hughes*, 65 Barb. 136; *Beecher* v. *Clark*, 12 Blatchf. 259.)

*Francis Lynde Stetson* for respondent. No charge of responsibility could be sustained upon the alleged omission to record the conveyances and leases. (*Hardin* v. *Osbourne*, 9 Reporter, 740.) An owner of property need not notify his tenant's creditors of his own title, if the tenant occupies, sublets and pays the taxes. (*Beecher* v. *Clark*, 12 Blatchf. 259; *Thomas* v. *Kelsey*, 30 Barb. 268; *Tomlinson* v. *Matthews*, Supreme Court of Illinois, March 21, 1881.) A judgment, in the absence of fraud, takes effect only on the actual interest in land which the debtor has at the time of the recovery of the judgment. If he has then no actual interest, having parted by deed with what he formerly had, the judgment is not a lien on the land, whether the deed has been recorded or not. (*In re Howe*, 1 Paige, 128; *Ellis* v. *Tousley*, id. 280; *White* v. *Carpenter*, 2 id. 217; *Dwight* v. *Newell*, 3 N. Y. 185; *Schroeder* v. *Gurney*, 73 id. 430.)

ANDREWS, J. It is not claimed that the plaintiff's judgment attached as a lien upon any interest, legal or equitable, of the judgment debtors, in the premises sought to be charged in this action. They had no such interest, jointly or separately, either at the time of the recovery of the judgment, or the accruing of the indebtedness upon which it was rendered.

The title of record to the bank building and premises, had been from June 28, 1853, in Alexander Duncan, Watts Sherman and William B. Duncan. The actual legal title was in Alexander Duncan, under a conveyance to the three persons named, and a subsequent deed of the undivided two-third parts of the premises, executed to him May 28, 1868, by Sarah M. G. Sherman, widow and sole devisee of Watts Sherman, and William B. Duncan and wife, subject to a mortgage on the premises for $200,000, dated May 5, 1858, and recorded June 28, 1858. The record title of the Pine street lot was in William B. Duncan, under a deed dated January 31, 1873, and recorded the same day. This deed was made subject to a mortgage of $40,000, which the purchaser assumed as part of the consideration of $85,000 paid

for the premises. The actual title to this lot was also in Alexander Duncan, under a deed from William B. Duncan and wife, executed May 25, 1874, expressing the consideration of $85,000, subject to the mortgage of $40,000, which the grantor had assumed in the conveyance to him. The firm of Duncan, Sherman & Co., was originally constituted in 1852, and was then composed of Alexander Duncan, Watts Sherman, and William B. Duncan. The firm purchased the bank lot and erected thereon the bank building known as Duncan, Sherman & Co's banking-house, and occupied it for its business as bankers. The firm was changed from time to time, by the introduction of new partners, and the death or withdrawal of others, but through all the successive changes, the firm name of Duncan, Sherman & Co., was continued, and the successive firms, continued to occupy, for its business, the same banking-house. The original partnership expired, by limitation, July 1, 1862. Alexander Duncan then withdrew from the business. The fact was announced in a circular, issued by the firm, accompanied by a printed statement, signed by Alexander Duncan, to the effect that he had withdrawn no part of the capital contributed by him to the firm, but had made it over to his two sons, William B. and David Duncan, absolutely, to promote their interest, and that of the new firm. The new firm was composed of Watts Sherman, William B. Duncan and David Duncan. Upon the death of Watts Sherman, in 1868, his son, William Watts Sherman, and Francis H. Grain, were admitted as partners with William B. Duncan, and David Duncan; and, after the death of David Duncan, in 1872, the firm consisted of William B. Duncan, William Watts Sherman and Francis H. Grain, and remained unchanged from that time, until its failure, July 27, 1875. Subsequent to the conveyance of the banking-house and premises to Alexander Duncan, in 1868, the firm occupied the same as tenants, under a written lease, executed by him which, however, was a lease at will, or from year to year, containing no term, but providing for the payment of an annual rent of $30,000, and containing a covenant, by the lessees, to pay taxes and repairs; and, in like manner, the firm occupied the Pine

street lot, after the conveyance to Alexander Duncan, in 1874, and sublet such parts of both premises, as were not required for the firm business. The deeds to Alexander Duncan, were not recorded until July 26, 1875, and the leases to the firm were not recorded. The dealing between the plaintiff, and Duncan, Sherman & Co., commenced in 1874, upon the appointment, by the plaintiff, of the firm, as its collecting agents in the city of New York, and the indebtedness upon which the plaintiff's judgment was recovered, accrued in July, 1875, shortly before the failure.

It is well settled, in this State, that, in the absence of fraud, a judgment takes effect only on the actual interest in land which the judgment debtor has, at the time of the recovery of the judgment, and, consequently, that the title of a grantee of the judgment debtor, by deed executed before the entry of the judgment, although unrecorded, takes precedence of the judgment. The fact that the grantee has not recorded his deed, creates no equity in favor of the judgment creditor. The latter is not a purchaser within the recording acts, and purchasers alone are protected by those acts against unrecorded conveyances. The general principle adverted to, is not assailed by the plaintiff, but its claim to have the real estate of Alexander Duncan subjected to the lien of its judgment against Duncan, Sherman & Co. is asserted upon the alleged ground that the defendant, withheld his deeds from record, and knowingly permitted the firm to appear to be the owners of the property conveyed, whereby the plaintiff was deceived into giving the credit to the firm, which resulted in the debt for which the judgment was rendered. In considering this claim, it is to be observed, that the plaintiff does not here question the *bona fides* of the conveyances to Alexander Duncan, or deny that they were founded upon a valuable, and adequate consideration. It is true that the complaint alleges that the consideration was inadequate, but the allegation is sustained, neither by the proof, nor the finding. The consideration for the conveyance of the Nassau street property was $500,000, and was paid by the purchaser assuming the mortgage for $200,000, by his canceling a

special loan of $200,000 made by him to the firm in 1862, and paying the balance of $100,000 in money. The consideration of the conveyance of the Pine street lot, beyond the mortgage of $40,000, was paid at the time. The complaint alleges, that the defendant withheld the deeds from record, for the purpose of avoiding a disclosure of the fact, that the property was not part of the assets of Duncan, Sherman & Co., or of any individual member of the firm; but the court refused to find this fact as alleged, but found simply, that the deeds were not recorded until the date before stated. The complaint also alleges that after the deeds were executed, Duncan, Sherman & Co. held out to the public, that the firm, or some of its members, were owners of the property, and that this was done with the knowledge of the defendant, and with his concurrence; but this allegation is not supported by any finding. The court, however, found, that when the plaintiff became a creditor of the firm, it was generally supposed that the bank building belonged to the firm, and that the plaintiff so believed, and continued its dealings under this belief, until Duncan, Sherman & Co.'s failure.

It is undoubtedly true that the owner of real or personal property, may by his conduct, in inducing others to deal with it, without informing them of his claim, debar himself from asserting his title, to their injury. This principle was asserted by Chancellor Kent in the leading case of *Wendell* v. *Van Rensselaer* (1 Johns. Ch. 344). "There is," says the Chancellor, "no principle better established in this court, nor one founded on more solid considerations of equity and public utility, than that which declares that if one man knowingly, though he does it passively, by looking on, suffers another to purchase and expend money on land, under an erroneous opinion of title, without making known his claim, he shall not afterward be permitted to exercise his legal right against such person. It would be an act of fraud and injustice, and his conscience is bound by this equitable estoppel." The case in which this language was used, was one where the defendant claimed under a secret deed, intentionally concealed

for many years, the grantor in the meantime remaining in possession, and dealing with the land as owner; and with the knowledge of the defendant, making sales in fee of different parcels to third persons, who entered into possession, and made extensive improvements, the defendant standing by and giving no notice of his claim. "After this," says the Chancellor, "he cannot be permitted to start up with a secret deed, and take land from *bona fide* purchasers." The case was between the owner of the legal title under the secret deed, and purchasers, and grantees, of the former owner. In this case, the plaintiffs are creditors, but we see no reason why the same principle should not protect creditors, who have given credit upon the faith of the apparent ownership of property in possession of the debtor, against a secret unrecorded conveyance, fraudulently concealed by the grantee; as when, with knowledge that the debtor is holding himself out as owner, and is gaining credit upon this ground, he keeps silence, giving no sign. *Hungerford* v. *Earle* (2 Vern. 261) was the case of bond-creditors to the father for money lent twelve years after a voluntary settlement by him on trustees for his sons, who did not enter and take possession according to the deed, but permitted the settler to live in the house, etc., and it was said that a deed not at first fraudulent may afterward become so by being concealed and not produced, "by which means creditors are drawn in to lend their money." The case of *Storrs* v. *Barker* (6 Johns. Ch. 166) presents another application of the principle of estoppel as against the owner of the legal title, and decides, in accordance with previous decisions, that if the true owner stands by, and advises and encourages a purchase from another, although in ignorance of his own title, he cannot afterward assert it to the injury of the purchaser. It is not necessary now to consider what are the limitations, if any, to this doctrine. But as a general rule, it would seem to be just, that if a person does an act upon the suggestion or request of another, the latter shall not be permitted to avoid the act, when it turns out to the prejudice of an antecedent right or interest of his own, although the advice on which the other party acted,

was given innocently, and in ignorance of his claim. The authorities establish the doctrine, that the owner of land may by an act *in pais*, preclude himself from asserting his legal title. But it is obvious, that the doctrine should be carefully and sparingly applied, and only on the disclosure of clear and satisfactory grounds, of justice and equity. It is opposed to the letter of the statute of frauds, and it would greatly tend to the insecurity of titles, if they were allowed to be affected by parol evidence of light or doubtful character. To authorize the finding of an estoppel *in pais*, against the legal owner of land, there must be shown, we think, either actual fraud, or fault or negligence, equivalent to fraud on his part, in concealing his title; or that he was silent when the circumstances would impel an honest man to speak; or such actual intervention on his part, as in *Storrs* v. *Barker*, as to render it just, that as between him and the party acting upon his suggestion, he should bear the loss. Moreover, the party setting up the estoppel, must be free from the imputation of *laches*, in acting upon the belief of ownership by one who has no right.

In this case, we are of opinion that the plaintiff must fail, for two reasons: *first*, for its *laches*, in not examining the record, and in making no inquiry, to ascertain in whom the actual title was vested ; and *second*, because there is no finding of fraud on the part of the defendant, and no proof from which the inference necessarily arises that his failure to record the deeds was with a fraudulent intent, and no clear evidence of knowledge of circumstances, which called upon him to put them on record. The plaintiff, when the dealing with Duncan, Sherman & Co. commenced, did not examine the record, and made no inquiry of them, or of the defendant, or other person, as to the ownership of the property. Its officers assumed without inquiry, from the possession by the firm, that the title was in Duncan, Sherman & Co. If the record had been consulted, it would have disclosed the fact, that only one of the parties had any record title to the land, and that his interest in the banking-house was an undivided third,

subject to a mortgage on the whole lot for two-fifths of its value, and that the Pine street lot, was mortgaged for nearly half its value. The plaintiff, in giving credit to Duncan, Sherman & Co., relied, doubtless, upon the general credit of the firm, to which the fact that they occupied an expensive building, generally supposed to belong to them, contributed. The record showed that it was largely incumbered, and even this fact, they took no pains to ascertain. The plaintiff, we think, cannot call upon the court to apply the highly penal doctrine of equitable estoppel, when it omitted the most obvious and natural means of ascertaining the true state of the title. We cannot assume, that if inquiry had been made, the true facts would not have been disclosed.

In the next place, there is no finding of any fraudulent intent on the part of the defendant, or that he omitted to record the deeds, to avoid disclosure, or to maintain the credit of the firm ; nor is there any proof that he knew that the firm was in failing circumstances ; nor that, in fact, its resources were not ample, up to a short time before its failure. There may be grounds for suspicion, of the *bona fides* of the defendant, in omitting to record the deeds. The recording of deeds is a usual, and generally an important precaution against subsequent conveyances by the grantor. But the law does not impose upon grantees, the duty of recording their titles for the protection of subsequent purchasers or incumbrancers. We are not prepared to say, and we have no right to say, in the absence of any finding of fraud, or proof of circumstances necessarily tending to the conclusion of fraud, that the omission by the defendant to record his deeds, prevents him from asserting, as against the plaintiff, his legal title to the land. Assuming, as is claimed, that Duncan, Sherman & Co. held themselves out as owners of the property, or were guilty of fraud (facts not found), the defendant cannot be charged with the consequences, unless he was privy to the fraud. In the absence of such proof the principle stated by Lord COTTENHAM in *Nicholson* v. *Hooper* ( 4 My. & Cr. 186), "that a party claiming a title in himself, but privy to the fact of an-

other dealing with the property as his own, will not be permitted to assert his own title against a title created by such other person, although he derives no benefit from the transaction," has no application.

The judgment should be affirmed.

All concur.

Judgment affirmed.