### DREXEL *et al. v.* PEASE *et al.*

(*Supreme Court, General Term, First Department.* March 13, 1891.)

1. **REVIEW ON APPEAL—OBJECTIONS NOT RAISED BELOW.**
   An interlocutory judgment, which sustained plaintiffs' claim to a lien on part of a fund in the hands of a receiver in the action, ordered a reference to determine the rights as between themselves of various defendants claiming the residue of the fund, and no objection to such reference was made at the time or on an appeal taken from the interlocutory judgment. *Held* that, on appeal from a final judgment on confirmation of the referee's report, the question whether such reference was strictly regular would not be considered.

2. **GOODS SHIPPED ON JOINT ACCOUNT—LIEN OF CONSIGNORS.**
   A letter written by S. to P., stating the terms of an agreement between M., S., and P. for the purchase, shipment, and sale of merchandise as a joint enterprise, profits to be divided between them in thirds, was accepted by P., and in pursuance of the agreement goods were shipped to him, and sold by him. *Held*, that S., in his own right and as assignee of M., was entitled, as against creditors of P. individually, to so much of the proceeds of such goods as was owing from P. for the shares of M. and S. in the joint enterprise.

3. **PLEADING AND PROOF—VARIANCE.**
   The answer of S. in the action in which the rights of such individual creditors of P. were asserted set forth the facts and the grounds of his claim specifically, but contained an averment that P. acted "as selling agent" in respect of the goods. *Held*, that S. was not thereby precluded from recovering part of the proceeds as upon dealings on joint account, as it appeared by admissions of such individual creditors of P. that they were fully apprised of S.'s claim; and the variance between S.'s answer and the proof was immaterial, and could be disregarded, or the answer amended, especially as no objection on the ground of such variance was taken at the trial.

4. **LIENS—RIGHTS OF INDIVIDUAL CREDITORS.**
   The application of the entire proceeds to pay the individual creditors of P. was not authorized by the fact that he had carried on the business in his own name. That fact was merely evidence in favor of his creditors that he was the real owner, and might be avoided by testimony.

Appeal from special term, New York county.

Action by Anthony J. Drexel and others against Eliza A. Pease, as executrix of Joseph M. Pease, deceased, George St. Amant, Alexander E. Orr, as assignee for the benefit of the creditors of Joseph M. Pease, the Mechanics' National Bank and the National City Bank of New York. The defendants

the Mechanics' National Bank, the National City Bank of New York, and Alexander E. Orr appeal from a judgment in favor of the defendant St. Amant as against the other defendants. For former report, see 11 N. Y. Supp. 133.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Horace E. Deming* and *Emmet R. Olcott,* for appellants.  *Oliver J. Wells,* for defendant St. Amant, respondent.

DANIELS, J.  The action was brought by the plaintiffs to establish a lien in their favor, or their right to priority in payment out of property sent by the defendant St. Amant, and at his instance, from France, to Joseph M. Pease, now deceased, to be sold by him at the city of New York. On the trial, as it was first completed, the right of the plaintiffs to their alleged lien and priority of payment was maintained by the court, and that was affirmed by this general term on appeal. After that affirmance the amount due the plaintiffs was paid out of moneys in the hands of the receiver appointed in the action, and the plaintiffs were thereby excluded from the residue of the controversy, which has been confined to the defendants themselves. The Mechanics' National Bank and the National City Bank of the city of New York became creditors of Joseph M. Pease, who was a defendant in the action in the earlier course of its proceedings, obtained attachments against him, and seized, under the same, the property and demands remaining in controversy as his individual assets; and they recovered judgments against him in their actions, and issued executions, under which levies were probably made. The defendant St. Amant asserted a superior title in himself to the property, and upon a motion made for that object, and with the assent of the parties, a receiver was appointed, who obtained possession of so much of this property as was levied upon, and sold the same, and also collected the outstanding debts owing for the alleged sales of other portions of it. The debts for which these banks recovered their judgments were individual liabilities of the defendant Pease alone, and it was objected on behalf of the defendant St. Amant that they were not entitled to be satisfied out of so much of this consigned property or its proceeds as remained owing to him for his share of the venture, or joint enterprise; and, if that were the nature of the dealings between himself and Joseph M. Pease, then the result claimed in this manner would seem to legally follow, for the individual creditors of a partner or joint owner of property can levy upon and appropriate to the payment of their debts by judgments recovered and executions issued against him no more than his interest in the property. This principle has been already well sustained by the authorities. *Wilson* v. *Gonine,* 2 Johns. 280; *Kaufman* v. *Schoeffel,* 46 Hun, 571, 576, 577; *Atkins* v. *Saxton,* 77 N. Y. 195; *Banking Co.* v. *Duncan,* 86 N. Y. 221; *Saunders* v. *Reilly,* 105 N. Y. 12, 18, 12 N. E. Rep. 170. Whether the property seized was within this principle was not decided by the court on the first part of the trial; but, after the evidence then offered had been received, it was deemed to best comport with the rights and interests in this manner brought in controversy that the parties to it should be supplied with the opportunity to produce additional evidence affecting it which might more fully and satisfactorily result in its determination. The agreement under which the property had been consigned by St. Amant and his assignor had been found as a fact by the court, and a reference was directed "to ascertain and report—*First,* what particular portion of the merchandise or the proceeds of sale thereof which came to the possession of the receiver appointed in this action were received by defendant Pease from the defendant St. Amant under the agreement between them mentioned in said decision; and, *second,* whether the indebtedness for which said defendants the Mechanics' National Bank and the National City Bank have so recovered judgment was an undivided indebtedness of said defendant Pease, or whether it was for advances

made upon account of the business conducted as stated in said decision under said agreement between said defendants St. Amant and Pease; and if, upon said reference, it shall be ascertained that it was for an undivided indebtedness of said Pease, then whether or not said defendants the Mechanics' National Bank and the National City Bank are, or either of them is, entitled to any lien or claim upon said merchandise or the proceeds thereof." No objection was then made by either of the parties to this reference, but its propriety seems to have secured the acquiescence and approval of each of them; but in the argument and points presented by the counsel for the appellants on this appeal from the final judgment confirming the report made by the referee occasion has been taken, in very uncivil language, to denounce the action of the justice in directing this reference. What has been said on this subject exceeds all bounds of legal propriety, and it fully deserves, and it should receive, as it does, the unqualified censure of this court. That the language was deliberately employed appears by the fact that it has been coolly printed and repeated in the brief, and therefore is without even the excuse of animation and excitement. What was directed by the court was deemed to be best to elucidate the merits of the dispute, and no word or act of dissent was expressed or intimated to it by the counsel then interested in the proceeding; neither was there in the appeal which was afterwards taken from the interlocutory judgment to the general term. After that practical acquiescence in the reference ordered this conduct on the part of the counsel is extremely unbecoming, and its prevalence requires checking; for in either case it has already extended so far as to include the courts of final resort in the state and nation when their decisions have been encountered as obstacles in the way of successful professional practice. It is a habit unworthy of counsel, and should be voluntarily discarded.

Whether this reference was strictly regular, is not a matter now requiring consideration for the reason already mentioned, that there was not when it was directed the slightest opposition to it, by the counsel. Under its authority evidence was taken which, with that then in the case, was considered by the referee, and afterwards by the special term, to warrant the conclusion that the defendant St. Amant had maintained a paramount right over that of the banks to the fund in the hands of the receiver. The foundation of this title was a letter written by the defendant St. Amant to and accepted by Joseph M. Pease. This letter stated the terms under which the business of these parties was to be managed and carried on; and as they have been expressed in the letter they were as follows: "Your favor of 5th inst. is duly at hand. I had an interview with the packer (Dumagnou) and owner of the Billett brand, who is willing to give us the monopoly of these sardines. The agreement is as follows: We to advance 80 per cent. of cost of each invoice as they are forwarded from the factories, this advance to be halved by you and I. As a basis we take the amounts of 1,000 of American $\frac{1}{2}$s, and 4,000 cases of 100 low $\frac{1}{4}$s, to be handled during the season. We to have the liberty of stopping shipments and annulling the agreement at any time during the season if we find it unprofitable, or have any other good reason. Interest to run on the account of 6 per cent. per annum. No commission to be charged by us, nor profit to be added by him. You to charge brokerage only when actually paid by him. Goods to be sold from wharf, unless some very good reason should exist for doing otherwise. Any loss occasioned by failure of your buyers to be supported in thirds, one-third each by you, the owner of the brand, and myself. The total of net proceeds of all accounts sale, compared with the total cost, shall determine the profit of the season, which shall be divided in thirds in same manner as stated in previous paragraph. If this should show a loss, this loss is borne by the packer. There are about 500 cases of tins cut to size of old American $\frac{1}{4}$, which will be sent on first, in order to get as many in as possible under the four-cent duty. In studying the

foregoing you will see that we are entirely in your hands as to the result, and without my knowledge of your straightforwardness and business integrity through many years I would never have suggested you to my friend here. I hope to have your early answer, and I trust that this will lead to something in a larger business way between us." By these terms these parties engaged in a joint enterprise for the purchase, shipment, and sale of sardines, and, after the reimbursement of its expenses and advancements, for the division of its profits in equal thirds between them; and it is under the agreement, and in his own right, and as assignee of Dumagnou, that St. Amant has been finally held to be entitled to the moneys in the hands of the receiver, which are less than what has been considered to be payable to him out of the proceeds of the sales. This recovery has been objected to as entirely unwarranted by the condition of the pleadings; but the objection does not seem to be well founded, for the answers of the banks and of the assignee of Joseph M. Pease admit that St. Amant claimed this money. They appear, therefore, from their own admissions to have been fully apprised of that fact; and his own answer has set forth the grounds of his claim, specially characterizing the business as it was carried on to the time of the failure of Joseph M. Pease, the last of August, 1884. By this answer it has been averred: "That between the 1st day of September, 1883, and the 20th day of August, 1884, this defendant was a merchant doing business at the city of Paris, and as such shipped and consigned various lots of goods or merchandise to the defendant Pease, to be by him sold; and said Pease, acting as selling agent, undertook to sell said goods, and remit the proceeds to the defendant, after deducting his commission as agreed, and such sums as should have been advanced or expended by him on account of said goods." It was further set forth that part of the goods belonged to St. Amant, and the residue to Dumagnou, who had assigned his interest to this defendant. It was also alleged that the interest of Pease was limited to a lien for his advances and his services. These, together with other parts of the answer, set forth the facts as there was evidence given tending to prove them; but the legal relations of these parties was more properly designated dealings on their joint account than that of an agency. The facts, however, were essentially as alleged, omitting the designation of Pease as a simple agent. The proof showing that they were jointly interested in the business was accordingly no more than an immaterial variance from the facts mentioned in the answer, which could very properly be disregarded on the trial, or even amended then and there, if the point had been raised by an objection. Code Civil Proc. § 723. This section empowered the court to insert a further allegation material to the case, and that would probably have been done if the objection now pressed had been raised, by stating that the dealings and business were on joint account for the mutual benefit of these parties. But while the case is replete with objections to evidence, the particular objection that this was not admissible under the answer was not taken. It is not in the case, and therefore cannot now be raised and insisted upon. *Barnes* v. *Perine*, 12 N. Y. 18; *Belknap* v. *Sealey*, 14 N. Y. 143, 148; *Simmons* v. *Sisson*, 26 N. Y. 264, 271. But even if the objection had been taken it would have been the duty of the court to disregard it, as the answer was drawn; for it was to be liberally construed under section 519 of the Code of Civil Procedure, and the defect disregarded by section 539, as long as it did not mislead the defendants, and it could not have done so, as they were previously aware, as by their answers they appear to have been, that this defendant claimed the property and its proceeds.

The evidence given on the trial, and afterwards upon the hearing before the referee, tended to sustain that position, for it was shown that the sardines shipped by the defendant St. Amant, or under his directions, had been delivered to Pease, and that also was found to be the fact by the interlocutory judgment, and that their business had conformed to the letter accepted for its

basis. The order appointing the receiver was made a part of the evidence on the trial, and, as has been already observed, was consented to by the counsel for the two banks. It created the receivership for this property and its preservation, until the rights of the parties to it should be settled in this action, and the receiver was authorized by the order "to demand, collect, get in, and reduce to possession any and all indebtedness due for any of the merchandise mentioned and described in said complaint and in the said schedules annexed to said affidavit of Gustav L. Riedel, sold and delivered by defendant Pease to the several persons hereinafter mentioned." The complaint referred to this property, and so likewise did the affidavit of Riedel, to which was added a schedule of the debtors who had purchased portions of it, and containing the amounts owing by them, respectively, therefor. The same schedule was made a part of the order appointing the receiver, and it was preceded by the statement that "the said indebtedness, and the several persons who owe the same, are as follows," and a like reference was made to the goods still on hand. There were distinct admissions that the debts which were mentioned had been created by sales made of the property placed in the possession of Pease, and that a residue still remained on hand unsold, and the admissions were not reduced in their effect by the other clause in the order reserving the right of the defendants to deny or put in issue any of the allegations or statements of fact contained in the affidavit of Riedel or of the plaintiffs, upon which the application was based for the appointment of the receiver. The controversy, as it was defined by the answers of the banks, related not so much to the identity of the goods or of the debts owing for them by the customers of Pease as it did to the priority claimed by St. Amant over the banks and the assignee for the benefit of the creditors. Pease had carried on the business in his own name, and could without doubt confer a complete title by his sales upon his purchasers, but that authority afforded no aid to the banks in their proceedings taken to appropriate the property and the outstanding debts to the payment of the individual liability of Pease. In those proceedings they could take only his title and interest, as that existed between himself and St. Amant, whose claim under their business arrangement was entitled to priority of settlement. The manner in which the business was carried on by Pease was no more than evidence in favor of the banks and the assignee that he was the owner in fact. But it was directly met and avoided, by the admissions of the order and the evidence of Riedel, who was in the store from April until the failure of Pease. He was there as the agent of St. Amant, taking care of his interests, and testified to the goods received and the sales made of them, and identified them by marks on their packages. His evidence in these respects supplemented that contained in the order, and reasonably well established the amounts and value of goods received by Pease, and the outstanding debts created by their sales; and these defendants gave no evidence whatever, tending to create doubt in the correctness of his statements concerning either of these subjects, but the statements were confirmed by the evidence of the receiver, showing the goods received by him, and the collection of the identical debts mentioned in the schedules annexed to the affidavit of Riedel, and contained in the order appointing the receiver. It certainly is not too much to say of this proof that it was sufficient to authorize the referee and the court to conclude that all the property here in controversy was received by Pease under the business arrangement, as that was mentioned in the letter of St. Amant, and that the goods on hand and these outstanding debts were controlled by that arrangement. The opinion of the general term (11 N. Y. Supp. 133) on the decision of the appeal from the interlocutory judgment has been referred to as inconsistent with this conclusion, but it is not, for what was then being considered was the authority of Pease to confer title on persons dealing with him in the regular course of this business, where he did have the power to transfer the title, as that was held both in favor of the plaintiffs

and of the National City Bank when the title of the latter to the proceeds of the 107 cases of sardines was sustained.  These transactions were within the apparent as well as actual authority of Pease, while the proceedings of the banks to apply the goods and the outstanding debts to his individual indebtedness as clearly transcend it.  The 28 cases of sardines of another than what has been called the "Billett Brand," amounting to $767.25, were not included in the referee's report, nor the judgment entered upon it.  These cases went to make up the final aggregate mentioned by the receiver and obtained from all his sales and collections, amounting to $24,924.75, while the referee reported in favor of defendant St. Amant for no more than the sum of $23,630.41, and for that the final judgment was directed and entered.  What the referee reported for was the amount St. Amant was held entitled to receive out of the proceeds of the Billett sardines, they all having been sold by the receiver, and from the outstanding debts which he had collected, and that decision was warranted by the evidence.  The report does not seem to have exceeded the scope of the reference ordered in any material respect, neither does either of the exceptions to it, or to the decisions of the special terms, or the rulings upon questions of evidence, appear to have been well founded.  The attaching creditors of Pease and his general assignee are obliged to stand on the liability of Pease to St. Amant in his own right and as assignee of Dumagnou. That is paramount to the attachments and judgments for the recovery of the individual debts of Pease, and so it is to the latter's general assignment, and, as all the remaining proceeds of the sales and the collections are less than his interest, the judgment should be affirmed, with costs.  All concur.