# ADDISON J. LYON, APPELLANT, v. WILLIAM A. MORGAN AND OTHERS, RESPONDENTS.

64 111
143a 505

*Estoppel — laches — effect of a failure to cut off the equity of redemption — day in court.*

Joseph and Silas Carman, father and son, were, on November 23, 1883, the owners of a tract of land, the record title of three-quarters of which was in Joseph and one-quarter in Silas. On that day Joseph, stating that he was the owner in fee of the whole tract, borrowed, upon his bond and a mortgage upon the tract, of Albert Smith, as guardian of an infant, the sum of $10,000. Silas was present, claimed no title in himself, and further stated that he had none, and Smith loaned the money in reliance upon these statements of the Carmans.

In June, 1888, a bank recovered a judgment against Silas, under which, in October, the sheriff sold his interest in the premises in question to Addison J. Lyon. and in January, 1890, the sheriff executed a deed of the premises to Lyon. In December, 1888, Smith foreclosed his mortgage, but he made neither the bank, nor Silas, nor Lyon a party to the foreclosure suit.

Upon the foreclosure sale, in February, 1890, William A. Morgan became the purchaser, both Morgan and Lyon knowing nothing when they took their deeds of the representations made by Silas at the time of the loan.

In an action for partition, brought by Lyon against Morgan:

*Held,* that there existed no equitable estoppel as against Lyon.

That a party setting up an estoppel must be free from laches.

That an examination of the records would have shown the title of Silas, and also the judgment of the bank, the execution, the sheriff's certificate of sale and his deed.

That the representations of Silas were not made in a negotiation for the title, but to acquire a lien by mortgage.

That as he was not made a party to the foreclosure, his equity of redemption had never been cut off nor that of his successors in interest, and the technical legal title remained in him on which the judgment against him was a lien.

That before Lyon's rights could be cut off he should have been given an opportunity in court to claim that the mortgage should be satisfied first out of the parcel of Joseph before resort was had to his own.

APPEAL by the plaintiff Addison J. Lyon from a judgment of the Supreme Court, entered in the clerk's office of the county of Broome on the 4th day of June, 1891, dismissing the complaint upon the merits after a trial at the Broome Special Term by the court.

The action was brought for the partition of real estate, consisting of sixteen acres of land in the village of Port Dickinson.

Plaintiff alleges he is the " owner in fee simple, and is the holder and is in possession of the equal undivided one-fourth of all that tract or parcel of land, situate in the town of Binghamton, county of Broome and State of New York, containing about sixteeen acres of land."

The answer denies the ownership, and alleges the fee and right of possession to be in William A. Morgan, and also alleges that " November 23, 1883, one Joseph Carman being in possession of, and claiming to be the actual owner in fee of premises described in the complaint, executed and delived to one Albert Smith, as guardian of the property of Frank Albert Smith, his bond to secure the payment of the sum of $10,000, and as collateral security to the payment thereof, at the same time he and his wife duly executed, acknowledged and delivered to said Smith a mortgage upon said premises and other lands."

And that the mortgage was taken " upon the faith and belief of said Smith, that said Joseph Carman was the sole owner of the lands described in the complaint and the other lands described in said mortgage, and that his title was not incumbered or subject to any lien, and the said Joseph Carman at the time affirming that he was the owner of said lands in fee, and that they were not incumbered, which said Smith believed to be true and knew nothing to the contrary."

The answer also alleges " that Silas N. Carman, the person through and under whom plaintiff claims to have received title, and whom the plaintiff alleged was the actual owner of the premises described in the complaint at the time said money was lent, and said bond and mortgage were executed and delivered, was present and knew of said loan of money, and heard the affirmation of said Joseph Carman that he was owner in fee of said lands, and knew that said money was lent and advanced on the belief that he was such owner; and he, said Silas N. Carman, at that time asserted no title or interest in said premises or claim thereto, but, on the contrary, expressly stated that he neither had nor claimed to have any right, title or interest in and to said premises, and consented and requested that said Smith, as such guardian, loan said $10,000, taking as security said bond and mortgage. Wherefore defendant alleges that plaintiff and his predecessors in title, said Silas N. Carman, is estopped and barred

from asserting any title or interest in said premises as against this answering defendant, and this defendant's title is superior and paramount to that of plaintiff or his predecessor."

The answer alleges the foreclosure of the mortgage, and that William A. Morgan became the purchaser of the premises for $6,800, and became the owner in fee of the said premises and every part thereof.

The trial court found that "Joseph Carman became the owner of an undivided three-fourths of said sixteen acres  *  *  *  and was such owner on the 23d day of November, 1883."

Also found that " Silas N. Carman became the owner of the remaining undivided one-fourth of said sixteen acres  *  *  *  and was such on the 23d day of November, 1883."

Also found that, " on the 23d day of November, 1883, the said Joseph Carman applied to one Albert E. Smith, as general guardian of Frank Albert Smith, a minor, through the latter's agent, William E. Taylor, for a loan of ten thousand dollars ($10,000), to be secured by a mortgage on said 16 acres, with other lands. Said application was made by Joseph Carman in person, and he was accompanied at the time by said Silas N. Carman. At the time of the making of said application, said Taylor, acting as agent as aforesaid, inquired of said Silas N. Carman if he had any interest in the said lands, including the said 16 acres, and Silas replied that he had not any such interest. Joseph Carman also, at that time, stated that he owned the whole of said premises, which statement said Silas N. Carman did not contradict in any way. Said William E. Taylor, as agent for said guardian aforesaid, upon the date last mentioned, loaned to said Joseph Carman the sum aforesaid, and said Joseph Carman, to secure the same, on that day executed, acknowledged and delivered to the said Taylor, acting for said guardian, a mortgage, in and whereby he granted to said guardian, his successors and assigns, said 16 acres, with other lands, which grant was given as security for the payment of the sum aforesaid, and interest thereon. Said loan was made and mortgage taken and accepted by said Taylor on behalf of said guardian, relying upon the aforesaid statement of Silas N. Carman, and he acted and depended on said statement in so doing."

From the evidence it appears that a foreclosure of the mortgage was commenced about December 1, 1888, and a judgment of foreclosure was entered in December, 1889, and a sale thereunder was made by the referee February 11, 1890, and William A. Morgan became the purchaser upon a bid of $6,800, and took the usual referee's deed. William A. Morgan gave back a mortgage to the defendant Waterman, as guardian of Frank Albert Smith (he having became such guardian), in the sum of $5,000.

Silas N. Carman was not made a party to the foreclosure action; nor was Addison J. Lyon, the plaintiff, made a party to the foreclosure action.

The First National Bank of Binghamton on the 16th day of June, 1888, recovered a judgment against Silas N. Carman upon a promissory note made by him for $650, and against Wilson Culver, Charles H. Culver and Addison J. Lyon (the plaintiff here), who were indorsers upon such note. An execution was issued upon that judgment on the 16th day of June, 1888, to the sheriff of Broome county, who, having received the full amount of the execution October, 1888, returned the same satisfied October 24, 1888 By the sheriff's certificate of sale, it appears that on the twenty-fourth day of October, under the execution, he sold to Addison J. Lyon, for $762.95, all the interest, right and title of Silas N. Carman in and to the undivided one-fourth part of said sixteen acres. The certificate was recorded January 3, 1889, and on the 25th day of January, 1890, the sheriff executed to Addison J Lyon a conveyance of the equal undivided one-fourth part of the sixteen acres of land which was recorded January 26, 1890.

The Special Term found as conclusions of law : " (1.) That Silas N. Carman and his privies and successors in interest, including the plaintiff herein, are held and estopped by his acts set forth in the fifth finding of facts, and by the matters set forth in the sixth and seventh findings of fact, from claiming any interest in said sixteen acres as against said mortgagee, his privies, successors in interest, including the defendant Morgan and the defendant Waterman. (2.) That the defendants Morgan and Waterman are entitled to a judgment dismissing the complaint upon the merits, with two bills of costs."

The court also found that Silas N. Carman, after the death of Abram Bevier, which occurred in January, 1871, " entered into pos-

session of said premises with the other joint owners, and so continued in possession until possession was taken by Addison J. Lyon, the plaintiff in this case as hereinbefore stated."

It was also found: "There is no evidence that said Lyon, prior to his taking said deed from the sheriff, ever had any notice that said Silas N. Carman had stated to said Albert E. Smith, guardian, or to said Waterman, or to any person, that Joseph Carman owned the whole title, or that he, said Silas, had no part of the title."

It was also found: "There is no evidence that said William A. Morgan was informed of the representations made by said Silas N. Carman at the time of the loan of the said $10,000, or that he bid off said premises on the mortgage sale relying upon any representations made by said Silas N. Carman."

The court declined to find "that Addison J. Lyon, the plaintiff, is the owner in fee of the equal undivided one-fourth of said premises."

Exceptions were taken to the findings of fact and to the refusals to find.

*Edward K. Clark*, for the appellant.

*George Bowen*, for the respondent Morgan.

*D. S. Richards*, for the respondent Waterman.

HARDIN, P. J.:

Appellant claims to be the owner of an undivided one-fourth part of the parcel of land known as about sixteen acres described in the complaint. He holds a deed from the sheriff, which was recorded in Broome county on the 28th day of January, 1890, having purchased the interest alleged to be in Silas N. Carman on the 16th day of June, 1888, on which latter date a judgment in favor of the First National Bank of Binghamton was docketed against Silas N. Carman for $668.58 damages, and $24.03 costs. According to the evidence, and to the findings of fact made, on the 16th day of June, 1888, when the judgment was docketed, Silas N. Carman held the record title to the one undivided fourth part of the premises described in the complaint. The proceedings for the sale of that interest upon the judgment, the purchase by the plaintiff, the certificates delivered to him and the deed received by him, seem to be regular in form and sufficient to pass the formal, legal title to the plaintiff. Plaint-

iff's bid at the sale was $762.95, and he seems to have paid $57.61 expenses of the sale. However, the respondents claim to defeat the title of the plaintiff by reason of an alleged estoppel. It appears that on the 23d of November, 1883, Joseph Carman, the father of Silas, desired to obtain a loan of $10,000 upon certain other lands adjacent to the sixteen acres, and that in the negotiations and applications for the loan, Silas joined his father, and upon being questioned as to his interest in the sixteen acres, "denied having any such interest or claim; and acting and relying upon this information, and not knowing anything to the contrary, the loan was consummated and a mortgage taken on the 16 acres, as well as others, to secure the $10,000 loan." The mortgage was recorded. After the docketing of the judgment already mentioned an action to foreclose the mortgage was commenced on the 1st of December, 1888, and the proceedings were had in the action, usual in such cases, resulting in a judgment in foreclosure, and upon such judgment a sale was made on the 11th day of February, 1890. Silas N. Carman was not made a party to that foreclosure; nor was the bank, the judgment-creditor, nor the plaintiff in this action. At the mortgage foreclosure sale on the 11th of February, 1890, the defendant, William A. Morgan, bid off the premises and received a deed from the referee conducting the sale, which was recorded February 20, 1890. If he had, at the time of making his bid, made a diligent search of the record, he would have discovered the record title to have been in Silas N. Carman at the time the bank recovered the judgment against him on the 16th day of June, 1888, and that the premises had been sold, sheriff's certificate given, and that no redemption had taken place, and that a sheriff's deed had been delivered and recorded carrying the formal, legal title to the plaintiff. The trial judge has found that "there is no evidence that said William A. Morgan was informed of the representations made by said Silas N. Carman at the time of the loan of the said $10,000, or that he bid off said mortgage premises on the mortgage sale, relying upon any representations made by said Silas N. Carman."

He has also found that, at the time the loan was made upon the mortgage, inquiry was made of Silas N. Carman if he had any interest in the sixteen acres, and that he "replied that he had not any such interest; Joseph Carman also, at that time, stated that he

owned the whole of said premises, which statement said Silas N. Carman did not contradict in any way."

He also found, " Said loan was made and mortgage taken and accepted by said Taylor on behalf of said guardian, relying upon the aforesaid statement of Silas N. Carman, and he acted and depended on said statement in so doing."

As a conclusion of law the Special Term found : " That Silas N. Carman and his privies and successors in interest, including the plaintiff herein, are held and estopped by his acts set forth in the fifth finding of facts, and by the matters set forth in the sixth and seventh findings of fact, from claiming any interest in said sixteen acres as against said mortgagee, his privies, successors in interest, including the defendant Morgan and defendant Waterman ; " and thereupon he ordered the complaint dismissed, with costs. Reasonable exceptions were taken to the findings and to the refusals to find.

If the parties taking the mortgage had been vigilant in searching the record for the title or any incumbrance upon the sixteen acres, they would have learned that the title of one undivided fourth was in Silas N. Carman. So, too, if the party foreclosing the mortgage had, at the commencement of such suit, to wit, the 1st of December, 1888, after learning of the title of one undivided fourth being in Silas N. Carman, they would have discovered a judgment against him, as the bank judgment was recovered on the 16th day of June, 1888. So that it may be observed that diligence at the time of the loan ; diligence at the time of the commencement of the action ; *diligence pending the foreclosure action and prior to the sale which* was in February, 1890, in the mortgage suit, would have disclosed the record title and the facts and circumstances now relied upon by the plaintiff. However, it is insisted, in behalf of the respondents, that the estoppel is efficient and precludes the plaintiff from asserting legal title to the undivided fourth in the sixteen acres. We think otherwise. In *Thompson* v. *Simpson* (128 N. Y., 270) the doctrine of estoppel, as applicable to real estate, is very extensively considered, and its effect upon transactions in respect to the real estate ; it is there said, " the doctrine of equitable estoppel, when invoked to bar the legal title to land, should be cautiously applied, and only when the grounds for its application are clearly and satisfactorily established." In *Trenton Banking Company* v. *Duncan*

(86 N. Y., 230) it was said : " The party setting up the estoppel must be free from the imputation of laches, in acting upon the belief of ownership by one who has no right."

When the representations were made by Silas N. Carman, the parties were negotiating for a loan to be secured by a lien upon real estate; they were not negotiating for the title. A mortgage was executed which simply gave a lien upon the real estate owned by Joseph Carman, and it was then assumed by the lender, and such assumption was justified by the representation made by Silas, that Joseph was capable of creating a lien upon the whole sixteen acres, giving full force and effect to the representation and binding Silas Carman, by reason thereof, to the full force and effect of the mortgage lien, it may be said that only a mortgage lien was created. Joseph did not undertake to convey the title to the sixteen acres, and the effect of the representation made by Silas simply induced the lender to take a lien upon the premises. If it be assumed that the full force of the representation is to be given to the mortgagee and those holding under him, still the mortgagee and those holding under him only acquired, in virtue of the representations, a lien upon the premises. If Silas N. had joined in the mortgage, certainly he would have been a necessary party to the foreclosure ; he would have had a right of redemption ; and if full force is given to his representation, it only secures to the mortgagee and those claiming under him the right to enforce a lien upon the undivided fourth of the sixteen acres. Silas N. Carman, as before observed, was not made a party to the foreclosure suit ; nor was his judgment-creditor made a party, nor was the purchaser at the execution sale upon the judgment against him made a party, and, so far as the equity of redemption which remained in Silas was concerned, it never has been cut off. Silas, notwithstanding the representation made by him, which induced the party to take a lien, was entitled to redeem the mortgage ; his judgment-creditor was entitled to redeem, and the purchaser at the execution sale was entitled to redeem. Hence it follows that the plaintiff has never been divested of the legal title which he acquired per force of the judgment, execution, sheriff's certificate and sheriff's deed. It seems that the doctrine of estoppel was carried too far when the conclusion was reached at the Special Term that the plaintiff had no standing to maintain partition. In

*Ackley* v. *Dygert* (33 Barb., 176), it was said: "A person cannot be divested of his property by being ignored. He has a right to a day in court before that power can be rightfully exerted." The extent of estoppel depends upon equitable considerations. (See 2 Pom. Eq., § 813; *Campbell* v. *Nichols*, 33 N. J. L., 81.) And, therefore, each case is governed largely by its own particular circumstances. It cannot be successfully asserted that the mortgagee, in parting with his money upon the representation that was made to him, which is now insisted upon by way of estoppel, acquired any more than a lien upon the premises. For the purpose of acquiring a lien, the mortgagee may be said to have relied upon the representation. If he is considered as the holder of a lien upon the property, he is allowed all that equitably he can claim he acquired by reason of the representation that was made at the time of the loan. It seems reasonable that before such a lien should ripen, a party succeeding to the legal title of Silas — through the instrumentality of the bank judgment, the execution thereon, the sale, certificate of sale, failure to redeem, the deed given in pursuance of the sale — should be given an opportunity to protect his right by requiring the mortgagee to resort to the other property embraced in the mortgage first, and only resorting to the property acquired by the plaintiff for the purpose of recovering any sum necessary to liquidate in full the lien thus acquired. It does not seem appropriate at this time to fully consider and determine all the equities the defendant may be entitled to assert, inasmuch as the evidence upon a new trial may differ from that before us in the present case. We forbear further comment, having reached the conclusion that the technical legal title of Silas N. Carman did not pass from him by virtue of the mortgage, but remained in him, and was acquired by the plaintiff in virtue of the deed which he placed upon record before the foreclosure sale, and the deed given thereafter, which was subsequently recorded.

If these views are correct, the judgment of the Special Term should be reversed and a new trial ordered, with costs to abide the event.

MERWIN, J., concurred; MARTIN, J., not sitting.

Judgment reversed and a new trial ordered, with costs to abide the event.