H. D. BLAKESLEE, Appellant, *v.* ISAIAH SINCEPAUGH, Respondent.

*False statements made by an infant to the purchaser of property estop the infant — when a failure to examine the records is not negligence.*

Where statements, to the effect that a party has no deed or mortgage against certain land and no interest therein, are made by one person to another for the purpose of inducing the latter to purchase such land, although the land is at that time the property of the person making such statements, and where the person to whom such statements are made, relying thereon, purchases the land, the fact that the person so making such statements was at that time an infant, providing he was of an age to appreciate his rights and duties, does not prevent him from being estopped by such statements from claiming the property.

Where false representations were made by the owner of land, and an intentional fraud was committed by him in order to facilitate the selling of his property as the property of another, a purchaser is not, as a matter of law, guilty of negligence in omitting to consult the records in the office of the county clerk.

APPEAL by the plaintiff, H. D. Blakeslee, from a judgment of the Supreme Court in favor of the defendant, entered upon a verdict for the defendant, rendered at the Tompkins Circuit, in the office of the clerk of the county of Tompkins on the 27th day of October, 1891, and from an order made at the Tompkins Special Term, entered in said clerk's office of Tompkins county on the 30th day of December, 1892, denying a motion for a new trial.

The action was in ejectment for the recovery of nineteen and forty-one one-hundredths acres of land. In the complaint it is alleged that on December 3, 1880, Havilla D. Blakeslee, then being the owner of these and other lands, conveyed the same to the plaintiff; that plaintiff thereupon entered into possession and so remained until on or about December 1, 1882, when the defendant entered into possession and ousted the plaintiff, and that defendant has ever since been in possession.

In the answer it is, among other things, alleged that the defendant, on the 1st of December, 1882, purchased the premises of Havilla D. Blakeslee; that, shortly before this, the plaintiff, knowing that defendant was about to purchase from Havilla D. Blakeslee, falsely and fraudulently represented to the defendant that he, the plaintiff, had no title or interest in the premises and that they were owned by Havilla D. Blakeslee, and that defendant, relying

on such representations and by reason thereof, took a conveyance from Havilla D. Blakeslee, paying him therefor the sum of $680; that defendant thereupon went into possession and has made extensive improvements on the property. The answer also alleges that defendant has no knowledge or information sufficient to form a belief as to whether the plaintiff became the owner or received a conveyance on or about December 3, 1880, or entered into possession.

*M. N. Tompkins,* for the appellant.

*David M. Dean,* for the respondent.

MERWIN, J.:

Upon the trial of this action it was shown on the part of the plaintiff that Havilla D. Blakeslee, by deeds dated September 25, 1834, and September 22, 1838, became the owner of a quantity of land, and thereafter, by deed dated December 3, 1880, and duly recorded December 4, 1880, he with his wife conveyed the same to the plaintiff, excepting sixteen acres theretofore conveyed to the plaintiff. The premises in dispute are a part of the lands described in these deeds. The consideration of the deed of December 3, 1880, as stated in the deed, is the sum of one dollar and the maintenance and support of the parties of the first part during their natural lives. It was then shown on the part of the defendant, that Havilla D. Blakeslee and wife, by warranty deed dated December 1, 1882, and recorded December 5, 1882, conveyed the premises in dispute to the defendant for the consideration therein named of $680, which defendant at the time paid to the grantor or the person acting for him. Havilla D. Blakeslee was the grandfather of plaintiff, and evidence was given tending to show that plaintiff at this time lived with his grandparents, on the farm of which the premises in question were a part; that he knew of the negotiations for the purchase by defendant of the grandfather; that during these negotiations the defendant saw the plaintiff, told him he was talking about buying a piece of land of his grandfather, and had heard that he, the plaintiff, had an interest in it, and asked him whether that was so, and whether he had any deed or mortgage against it; and he, the plaintiff, replied that he had no deed or mortgage against it, and had no interest in his grandfather's premises; that the plaintiff at the time knew that

he was the legal owner of the property, and made the statement to defendant with intent to deceive him and induce him to buy of the grandfather; that the defendant thereupon, in reliance upon the truth of plaintiff's statement, and in ignorance of the true state of the title, made the purchase of the grandfather.

The plaintiff denied making the representations or that he knew that his deed covered the property conveyed to defendant. It was also shown that plaintiff was then a minor, having been born March 6, 1862.

At the close of the evidence the counsel for plaintiff asked the court to direct a verdict for the plaintiff upon several grounds, chiefly that the evidence upon the part of the defendant was not sufficient to constitute an estoppel; that at the time of the alleged statements the plaintiff was an infant, and that if he made the statements he did not know at the time whether or not he owned the land, and that no fraud was shown upon his part, and that the defendant was guilty of negligence in not causing the records to be searched. The court denied the motion and stated that in its opinion the better way to dispose of the case was to submit it to the jury on four questions: "*First*, whether these statements were made by the plaintiff to the defendant; *second*, whether the plaintiff had knowledge at the time he made them, that he was the legal owner of this land; *third*, whether they were made by the plaintiff with the intention that they should be acted upon by the defendant in the purchase of the land; *fourth*, whether they were acted upon and relied upon by the defendant when the land was purchased by him." The plaintiff's counsel duly excepted to such ruling and to the denial of the motion. The case was thereupon submitted to the jury upon the line suggested by the court, and a general verdict rendered for the defendant. There was no exception to the charge and no request that any other question should be submitted to the jury.

1. The first proposition now presented by the plaintiff is, that the plaintiff, being an infant at the time of making the alleged statements, was not estopped thereby.

Assuming, as we must, that the facts, so far as warranted by the evidence, were found against the plaintiff, we have here a case of intentional fraud. In *Spencer* v. *Carr* (45 N. Y. 406), where, as

here, it was claimed that an infant was barred of her title by an equitable estoppel, it was held that in the absence of intentional fraud upon her part she would not be estopped, and that as that was not found she would not be deprived of her legal rights. The inference is, that if there was intentional fraud, the doctrine of equitable estoppel would apply notwithstanding infancy. The opinion of the court in the case strongly supports this inference, in cases where the infants are of sufficient age to appreciate their rights and duties. We are referred to no case in this State where the views suggested in *Spencer* v. *Carr* are criticised. In *Brumfield* v. *Boutall* (24 Hun, 457), the question of fraud on the part of the infant was not up, nor was it in *Sherman* v. *Wright* (49 N. Y. 231). The same may be said as to *Ackley* v. *Dygert* (33 Barb. 176). In *Brown* v. *McCune* (5 Sandf. 224), decided in 1851, it was held that fraudulent representations as to his age did not bind an infant. This case was criticised, and the opposite rule held in *Eckstein* v. *Frank* (1 Daly, 334). In *Green* v. *Green* (69 N. Y. 553), a father had taken a deed from his minor son and paid him the consideration, and the question was whether the son, on becoming of age, could repudiate the deed without restoring the consideration. It was held that he could, it appearing that the money was spent and he had no other property with which to replace it. There was no question of fraud in the case.

In 1 Story's Equity (§ 385), it is said in reference to cases like the present, that " cases of this sort are viewed with so much disfavor by courts of equity, that neither infancy nor coverture will constitute any excuse for the party guilty of the concealment or misrepresentation ; for neither infants nor *femes covert* are privileged to practice deception or cheats on other innocent persons." In 2 Sugden on Vendors (8th Am. ed. 507, chap. 23, § 1, pl. 17), it is said : " If a person having a right to an estate permit or encourage a purchaser to buy it of another, the purchaser shall hold it against the person who has the right, although covert, or under age." In 2 Pomeroy's Equity (§ 815), it is said : " An equitable estoppel arising from his (the infant's) conduct may be interposed, with the same effect as though he were adult, to prevent him from affirmatively asserting a right of property or of contract in contravention of his conduct upon which the other party has relied and been induced to act." Numerous cases are cited to each of the quoted propositions. The

same rule is stated in Bigelow on Estoppel, 448. (See, also, note in 44 Am. Dec. 386; Bispham's Eq. § 293.)

There is no doubt in the present case that the infant was of sufficient age to appreciate his rights and duties. He lacked only a few months of being of age. The rule to be inferred from the *Spencer* case, as to the application of the doctrine of equitable estoppel to infants, while it may not be entirely consistent with the supposed disability and need of protection of infants, has, I think, the weight of authority in its favor, and it should be followed by us in this case. The court below, therefore, properly held that the fact that plaintiff was an infant did not of itself relieve him.

2. The plaintiff further claims that he should not be estopped because he had no knowledge that he owned the land in dispute. This, however, upon the evidence was a question of fact and was found adversely to plaintiff.

3. It is further claimed that the burden of proof is on the defendant, and that the testimony being evenly balanced defendant must fail. It is true that the burden of proof was on the defendant, and that statements testified to by the defendant were denied by the plaintiff. It was, however, for the jury to determine where the truth was, and there were many surrounding circumstances that bore upon the question.

4. It is further claimed that the defendant was guilty of *laches* in neglecting to consult the records in the clerk's office, and the case of *Trenton Banking Co.* v. *Duncan* (86 N. Y. 221), is cited in support of the proposition. In that case the plaintiff, who sought the benefit of an estoppel, neither looked at the record nor made any inquiry of anybody as to the ownership of the property, and it was held that its failure to examine the record and make inquiry prevented its recovery. The present case is materially different. So in *McCulloch* v. *Wellington* (21 Hun, 5), there were no representations by the owner, but, as said in the opinion at page 14, it was the case of a purchaser who, from his confidence in the vendor, or from other circumstances, not imputable to the claimant, has purchased property and omitted to make the necessary and ordinary examination of title. In *Lyon* v. *Morgan* (19 N. Y. Supp. 201), the effect of failure to examine the record was not determined, and the case was decided upon other grounds.

If the present case was one where the owner was simply silent, it may be that the constructive notice from the record would prevent the defendant from receiving any benefit from the doctrine of estoppel. But assuming there were false representations and intentional fraud, the rule would be different. (*Brinckerhoff* v. *Lansing*, 4 Johns. Ch. 65; *Fisher* v. *Mossman*, 11 Ohio St. 47.) As said by Judge STRONG in *Hill* v. *Epley* (31 Penn. St. 334): "It should never be forgotten that there is a wide difference between silence and encouragement."

"A party setting up an equitable estoppel is himself bound to the exercise of good faith and due diligence to ascertain the truth." (2 Story Eq. [12th ed.] § 1553b.) Whether the defendant in that respect was negligent under the circumstances of the present case was a question of fact. (*Moore* v. *Bowman*, 47 N. H. 494.) The court below was, therefore, correct in holding that it should not be said, as matter of law, that the defendant was guilty of negligence.

5. The appellant claims that incompetent testimony was admitted to his prejudice, but we find no ruling that supports this contention.

No other question is presented. It follows that the judgment should be affirmed.

HARDIN, P. J., and PARKER, J., concurred.

Judgment and order affirmed, with costs.