THE MUTUAL LIFE INSURANCE COMPANY of New York, Appellant, *v.* THE FORTY-SECOND STREET AND GRAND STREET FERRY RAILROAD COMPANY, Respondent.

*Fraudulent issue of a certificate of stock — when a corporation is bound by it — bona fide holder — forged certificate — when a principal is responsible for the acts of an agent — authority of the officers of a corporation presumed — right of subrogation — the right does not depend on actual contract.*

The signing of a certificate of its stock by the transfer agent of a corporation, and the affixing of the corporate seal thereto by the person having the same in charge, is an affirmation by the authorized agent of the corporation, upon which the public has a right to rely that everything previously done in the issuing of such certificate has been rightly done

Although the secretary and transfer agent of a corporation has no authority to issue certificates of its stock, except upon the surrender and cancellation of previously existing valid certificates thereof, and after obtaining the signatures of the president and treasurer thereof to the certificates to be issued, yet the issuance of certificates in due form by him is a representation that such conditions have been complied with, and that the facts existed upon which his right to act depended, and if such certificates of stock be fraudulently issued by such transfer agent, the corporation is under an implied obligation to make indemnity to a person for the loss he may have sustained by the negligent or wrongful exercise by its officers of the general powers conferred upon them.

When certificates of stock contain apparently all the essentials of genuineness a *bona fide* holder thereof has a claim to recognition as a stockholder, if such stock can legally be issued, or to indemnity if this cannot be done. The fact of forgery does not extinguish this right when it has been perpetrated by or at the instance of an officer placed in authority, by the corporation, and intrusted with the custody of its stock books, and held out by the company as the source of information upon the subject.

A principal is responsible for the acts of his agent when acting within the scope of the general authority conferred upon him. It is not necessary that the agent should do the precise thing which the principal has authorized him to do, but when, so far as the world knows or can know with reasonable diligence, he has done so, the principal is liable for his acts.

The officers of corporations are presumed to have the authority to perform the duties which such officers ordinarily perform in corporations of like character.

One Hofele applied to the American Exchange Bank for a loan of $30,000 upon his note, and tendered certain certificates of stock in a corporation as collateral security. The bank before making such loan made inquiry at the office of the corporation as to the genuineness of the certificates, and was informed by

its secretary and transfer agent that they were genuine. Thereupon it made the loan of $30,000 upon Hofele's note, taking such certificates as collateral security.

Thereafter one Grant, acting in his own name, but really representing Hofele, applied to The Mutual Life Insurance Company for a loan of $32,000, and offered to give as collateral security the certificates of stock held by the American Exchange Bank as collateral security for the payment of Hofele's note. Thereupon the insurance company inquired of the bank what it knew about the certificate and was told of the information received at defendant's office; it then paid Hofele's note held by the American Exchange Bank, took Grant's note for $32,000, received the collateral held by the American Exchange Bank and paid Grant the difference in amount between his note and that given by Hofele

*Held,* that The Mutual Life Insurance Company was entitled to be subrogated to whatever rights the American Exchange Bank had acquired by reason of its inquiry at such corporation's office prior to the making of its loan to Hofele, to the extent to which the American Exchange Bank had acted upon such information

A volunteer cannot acquire an equitable lien or the right to subrogation, but a person who, at the request of another, advances money to redeem or pay off a security in which that other has an interest, is not of that character, and in the absence of an express agreement one will be implied, if it is necessary that it should exist for his use, and will be enforced.

The doctrine of substitution may be applied although there is no contract expressed or implied ; it rests on the basis of mere equity and benevolence.

APPEAL by the plaintiff, The Mutual Life Insurance Company of New York, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the city and county of New York on the 23d day of June, 1893, upon the report of a referee.

*C. E. Miller,* for the appellant.

*F. H. Smith,* for the respondent.

VAN BRUNT, P. J.:

There seems to be no serious dispute in regard to the material facts out of which arises the controversy sought to be settled in this action.

For some time prior to and on the 3d of February, 1883, John Green was president, Charles Curtiss was treasurer, and Eben S. Allen was secretary and transfer agent of the defendant. Prior to

this time Green signed, as president, certain blank certificates of stock of the defendant, one of which is the subject-matter of this action, and handed the same to Curtiss, the treasurer, who shortly after delivered the same to Allen, who thereafter kept them in his private drawer. In January, 1886, Allen took one of said blank certificates, signed by Green as president, and filled out the same, dating it February 3, 1883, numbering it 976, and stating the number of shares which it represented to be 229, and that the same belonged to F. W. Hofele, and writing the name of Charles Curtiss opposite the printed word " treasurer " upon said certificate, without the knowledge or authority of said Curtiss, and below writing his name, " Eben S. Allen," opposite to the words " transfer agent." This certificate Allen delivered to said F. W. Hofele.

Green had ceased to be president of the defendant, and Curtiss had ceased to be the treasurer in April, 1883. When the said certificate was filled out in January, 1886, as above stated, Charles Curtiss was president, and Allen was treasurer, secretary and transfer agent of the defendant.

The certificate as filled out by Allen read as follows:

" Capital stock, $750,000.
    " Shares $100 each.

" The Forty-Second Street and Grand Street Ferry Railroad
                        Company.

" No. 976.                                City of New York.
                                            " 229 shares.

" This is to certify that F. W. Hofele is entitled to two hundred and twenty-nine shares of one hundred dollars each in the capital stock of the Forty-second Street and Grand Street Ferry Railroad Company, transferable only on the books of the company, by him or his attorney upon surrender of this certificate, to be canceled, indorsed with the name of the party to whom a new certificate is to be issued for said stock or any part thereof, and accompanied with a declaration of sale or transfer, setting forth the number of shares transferred, and the person to whom, and the time when the same are so transferred. No certificate shall bind this company, unless the same be signed by their president, and countersigned by their treasurer and transfer agent.

" In witness whereof, the said company have caused this cer-
tificate to be signed by their president, and to be coun-
[SEAL.]  tersigned by their treasurer and transfer agent, and
sealed with their corporate seal, this third day of Febru-
ary, one thousand eight hundred and eighty-three.

                                " CHAS. CURTISS,
                                        " *Treasurer.*
" JOHN GREEN,
      " *President.*

                        " EBEN S. ALLEN,
                                " *Transfer Agent.*"

The issuance of this certificate was never authorized by the
defendant, but the same was fraudulently and feloniously issued by
Allen, and neither the defendant nor any of its officers, except Allen,
had any knowledge or information of such issuance until August,
1889, when the plaintiff demanded the transfer of the stock pur-
porting to be represented by such certificate. After the receipt by
Hofele of such certificate, he applied to the American Exchange
Bank for a loan of $30,000 upon his note, and tendered this certifi-
cate as collateral security. The bank thereupon, and before making
the loan, made inquiry at the defendant's office as to the genuine-
ness of the certificate, and was informed by Allen, who was treas-
urer, secretary and transfer agent, and had charge of the issuance of
stock, that it was genuine. Upon receiving this information the
bank made the loan of $30,000 upon Hofele's note, taking said cer-
tificate as collateral. Subsequently, while the loan made by the
American Exchange Bank remained unpaid, one Grant, acting in
his own name, but really representing Hofele, applied to the plain-
tiff for a loan of $32,000, and offered to give as collateral security
229 shares of defendant's stock, which the plaintiff agreed to take.
Afterwards, Grant, accompanied by a messenger from the American
Exchange Bank, who brought the certificate of stock held by the
bank as collateral to the loan of Hofele, came to plaintiff's place of
business, and Grant having made his note for $32,000, the same,
with the certificate in question, was delivered to the plaintiff, and it
issued its check for the amount of the loan, which Grant then and
there indorsed to the American Exchange Bank, and delivered to
the messenger, and subsequently received back Hofele's note and

a certificate to Hofele's order for the difference between Hofele's note and the amount received from the plaintiff, less $320 paid in money.

Before making this loan to Grant, the plaintiff inquired of the American Exchange Bank what it knew as to the certificate, and the information previously received by the bank from the office of the defendant was communicated. The loan by plaintiff was renewed from time to time, no part thereof having been paid. Subsequently the plaintiff demanded a transfer of the stock, but such transfer was refused, and thereupon this action was brought to recover the damages sustained. The cause having been tried before a referee, and he having reported for a dismissal of the complaint, from the judgment entered upon such report this appeal is taken.

Two questions seem to be presented which it is necessary to consider.

The first is whether the defendant is bound by the representations contained in the certificate itself, issued by its duly authorized agent, and, secondly, whether the plaintiff in this action is entitled to any benefit from the representations made to the American Exchange Bank at the office of the company as to the genuineness of this certificate prior to the making of the loan to Hofele.

As to the first of these propositions we are referred by both parties to the decision in the case of the Fifth Avenue Bank against these defendants (137 N. Y. 231) as an authority establishing both the affirmative and the negative thereof. But we think, upon an examination of the facts in that case and the opinion of the court, that it will be seen that it is clearly intended to be decided that Allen, being the agent of the defendant, and being clothed with the authority to perform the final acts required in the issue of a certificate of stock, when he performed those acts, and delivered the certificate with the intent that it might be negotiated, so long as it remained outstanding, such certificate was a continuing affirmation, by the defendant, that it had been lawfully issued, and that all the conditions precedent upon which the right to issue depended had been duly observed.

In the *Fifth Avenue Bank* case, above cited, at the time of the date of the certificate Allen was treasurer, secretary and transfer agent, and he forged the name of the president to the certificate of

stock, and countersigned the same as treasurer and transfer agent, the difference between that case and the one at bar being that in this case he forged the name of the person who was treasurer at the time of the date of the certificate, instead of, as in the *Fifth Avenue Bank* case, forging the name of the president. And the sole question presented is whether this fact creates a difference in respect to the acts of Allen.

It is urged upon the part of the respondent that that difference is material, and makes the decision in the *Fifth Avenue Bank* case support the defendant's claim that no recovery can be had. This claim is based upon the fact that upon the face of the certificate it appears that it was not only not signed and countersigned by, but it does not even bear the names of, the officers of the company charged with the duty of signing and countersigning it when issued. It does, however, bear the names of the persons who were such officers at the time of the date of the certificate, but the name of the treasurer was forged by Allen, while the signature of the president was genuine.

It is further claimed that upon the face of the certificate it was provided that no certificate shall bind this company unless the same is signed by the president and countersigned by the treasurer and transfer agent; and that the certificate in question not having been countersigned by the treasurer, there was no continuing representation as held in the *Fifth Avenue Bank* case. But an examination of the opinion in the *Fifth Avenue Bank* case shows that the question as to the countersignature of the treasurer had no influence whatever with the court in its determination. The point there determined was that the transfer agent was the party who had the custody of these certificates, and issued them in proper cases by and with the assent of the corporation; that he was the officer of the corporation who was invested with that duty, and that the final acts attending their issuance were to be performed by him. This certificate in question was signed by him, and the corporate seal affixed — such corporate seal being in his charge — and when he did these things, it was an affirmation upon the part of the authorized agent of the company that everything previously done had been rightly done, and the public had a right to rely upon such affirmation.

In the *Fifth Avenue Bank* case the signature of the president

was forged while the face of the certificate gave notice that no certificate should be binding upon the company unless it was signed by the president.    And if the affirmation of the transfer agent who signed the certificate made a forged signature of the president binding upon the company, we can see no reason why the affirmation of this same officer in regard to the signature of another officer should not be equally potent.    It was not because it was a countersigning that it had this effect.    It would have been precisely the same as though the provisions of the certificate were that it should be signed by the ·transfer agent, instead of countersigned.    The affirmation arises from the fact that the transfer agent was the authority duly appointed by the corporation to affix its seal and sign the certificate as the last acts to be done, and issue it to the public.    The language of the court is : " When, therefore, the defendant's secretary and transfer agent countersigned and sealed this certificate and put it in circulation, he declared in the most formal manner that it had been properly executed by the defendant, and that every essential requirement of law and of the by-laws had been performed to make it a binding act of the company."    Nothing is said in regard to the counter-signature of the treasurer, to the effect that that signature must be genuine in  order that the representation should be perfect.

In the opinion attention is called to the familiar rule of agency as laid down in  Story, that the principal is to be held liable to third persons in civil suits for the frauds, deceptions, concealments, mis-representations, torts, negligences and other malfeasances  or mis-feasances and omissions of duty of his agent in the course of his employment, although the principal did not authorize or justify, or participate in, or, indeed, know of such misconduct, or even if he forbade the acts or disapproved of them.    " In all such causes the rule applies *respondeat superior*, and is founded upon public policy and convenience, for in no other way could there be any safety to third persons in their dealings, either directly with the principal, or indirectly with him through the instrumentality of agents.    In every such case the principal holds out his agent as competent and fit to be trusted, and thereby in effect he warrants his fidelity and good conduct in all matters within the scope of the agency."    Then the court go on and say : " It is true that the secretary and transfer agent had no authority to issue a certificate of stock, except upon the surrender

and cancellation of a previously existing, valid certificate, and the signature of the president and treasurer first obtained to the certificate to be issued. But these were facts necessarily and peculiarly within the knowledge of the secretary, and the issue of the certificate in due form was a representation by the secretary and transfer agent that these conditions had been complied with, and that the facts existed upon which his right to act depended. It was a certificate apparently made in the course of his employment as the agent of the company, and within the scope of the general authority conferred upon him ; and the defendant is under an implied obligation to make indemnity to the plaintiff for the loss sustained by the negligent or wrongful exercise by its officers of the general powers conferred upon them."

If the opinion had stopped here we think there would have been no ground whatever for the contention that the fact that the secretary and transfer agent in the case at bar had forged the signature of the treasurer was of any greater consequence than the fact that he had forged the signature of the president in the case cited.

It will be seen from what has already been said in reference to the case cited, that the theory of the decision is that Allen was the secretary and transfer agent of this company, and that it was within the scope of his authority to issue these certificates after he had procured the signatures of the president and treasurer, and that when he affixed the seal and signed it as transfer agent, certifying that these previous acts had been done, and issued the certificate to the public, the public had a right to rely upon the representations of Allen in respect to the regularity of the certificate. Attention is, however, called to the succeeding paragraph in the opinion, and this is the only foundation for the claim that, because the certificate in question was not countersigned by the treasurer, but his signature was forged, the public were not entitled to the protection of the representations of the agent of the defendant.

The court say : " The learned counsel for the defendant seeks to distinguish this case from the authorities cited, because the signature of the president to the certificate was not genuine. But we cannot see how the forgery of the name of the president can relieve the defendant from liability for the fraudulent acts of its secretary, treasurer and transfer agent. They were officers to whom it

had intrusted the authority to make the final declaration as to the validity of the shares of stock it might issue, and where their acts, in the apparent exercise of this power, are accompanied with all the *indicia* of genuineness, it is essential to the public welfare that the principal should be responsible to all persons who receive the certificates in good faith and for a valuable consideration, and in the ordinary course of business, whether the *indicia* are true or not." And after citing authorities the court continue : " The rule is, we think, correctly stated in Beach on Private Corporations (Vol. 2, § 488, p. 791). When certificates of stock contain apparently all the essentials of genuineness, a *bona fide* holder thereof has a claim to recognition as a stockholder if such stock can legally be issued, or to indemnity if this cannot be done. The fact of forgery does not extinguish his right when it has been perpetrated by or at the instance of an officer placed in authority by the corporation, and intrusted with the custody of its stock books and held out by the company as the source of information upon the subject ; " this latter quotation it is claimed denies that which has gone before, that where a corporation clothes an officer with the authority to finally act, and holds him out as the source of information upon the subject of the regularity of its certificate, it is bound by his acts.

Now, the language to which attention has been called, where the court speaks of the secretary, treasurer and transfer agent, has no particular significance. The whole scope and reasoning and foundation of the opinion was that Allen had been intrusted by the corporation with the stock books of the company, and held out as the source of information upon the subject of the regularity of its certificates ; and the force of the reasoning, which pervades the whole opinion, cannot be broken by the language used in a casual sentence ; and the conclusion arrived at is in accord with the principle enunciated by Story in the citation above cited, viz., that the principal is responsible for the acts of his agent when acting within the scope of the general authority conferred upon him. This does not mean that he does the precise thing which the principal has authorized him to do, but when, so far as the world knows or can know with reasonable diligence he has so done, the principal is required to respond. Any other rule would place every person at

the mercy of a principal where dealings had been through an agent, and in respect to corporations it would be absolutely impossible that business could be conducted, because the only other way to ascertain whether any of its officers have authority to act would be to call a meeting of the board of directors and get a resolution passed certifying to their powers in respect to each individual transaction. Corporations have become so general that the courts have been compelled to recognize the fact that the officers are to be presumed to have the authority to perform the duties which such officers ordinarily perform in corporations of like character.

In view of the conclusion at which we have arrived in respect to the effect of the certificate in question, it may not be necessary to touch upon or discuss the second proposition.

It seems to us very clear that, under all the principles governing the right of subrogation, the plaintiff was entitled to be subrogated to whatever rights the American Exchange Bank had acquired by reason of its inquiry at the defendant's office prior to the making of its loan, to the extent to which the American Exchange Bank had acted upon such information.

It is claimed upon the part of the respondent that the representations made to the American Exchange Bank afford no aid to any claim which might be advanced by the plaintiff; that if they constituted an estoppel at all it was only in favor of the bank; the representations were not made to the plaintiff, nor were they made to be communicated to the plaintiff or to influence its conduct; and that any estoppel they might have created cannot extend beyond the parties to the transaction in relation to which they were made. It is then asserted that this is settled beyond all controversy, citing numerous authorities. The authorities, however, do not sustain the proposition for which the respondent contends. Each of them is as distinct in its facts as it is possible to be from the case at bar, except perhaps that one might, upon a cursory reading, be held to be in point, and that one is the case of *Mayenborg* v. *Haynes* (50 N. Y. 675). But on examination it will be seen that even this case has no application. The action was upon a promissory note made by the defendant. The defense was that it was an accommodation note and was received by the plaintiff after maturity. The note was made for the accommodation of one Hopke, who

transferred it to Kugeler as security for an antecedent debt. The latter transferred it to plaintiff after maturity. Kugeler testified that when the note became due he presented it to defendant for payment, who replied in substance that he would see about it in two or three days. This conversation was reiterated to plaintiff when he purchased the note ; and the latter testified that he supposed he would not have taken the note if this had not been stated to him. The court below charged that if defendant promised to pay the note, and that fact was communicated to plaintiff, and he took the note upon the strength of the communication, believing it to be true, it would constitute an estoppel. This the court held to be error, stating that the declaration of the defendant Kugeler constituted no estoppel. All that this case decides is that a representation made to one who does not act upon it cannot protect another, to whom it was not intended to be communicated, who does act upon it. If Kugeler had made the inquiry before he took the note, and the representation had then been made in regard to the validity of the note, and he had transferred it to the plaintiff, a different question might have arisen.

In the case at bar the facts established show that the American Exchange Bank made the inquiries and acted thereon, loaning their $30,000. Within the decision of the court in the *Fifth Avenue Bank* case they were protected by such representations, and it is not necessary to discuss that question here. When the plaintiff in this action made its loan to Grant, acting as the agent of Hofele, it paid Hofele's loan to the American Exchange Bank by its own check and received the collateral which Hofele had deposited as security for that loan, viz., this certificate of stock. The plaintiff's money paid the debt of Hofele to the American Exchange Bank at his request and it took up the security. It seems to be clear that upon the principles of equity and under all adjudications in regard to subrogation the plaintiff is subrogated to the rights of the American Exchange Bank to the extent at least of the loan which the latter made. It is undoubtedly true that a volunteer cannot acquire an equitable lien or the right to subrogation, but it is equally true that he who, at the request of another, advances his money to redeem or even to pay off a security in which the other has an interest is not of that character, and in the absence of an express

agreement one would be implied if necessary that it should exist for his use and be enforced. But the doctrine of substitution may be applied, although there is no contract, express or implied. It is said to rest on the basis of mere equity and benevolence. In *Gans* v. *Thieme* (93 N. Y. 225) this doctrine of subrogation was applied certainly to as great an extent as should be done in the case at bar. It appeared in that case that one Herman Thieme, deceased, was at the time of his death the owner of certain land described as lots A and B, subject to a mortgage of $2,000 to the German Savings Bank. He left surviving a widow and several children, and by his will appointed Margaretha Thieme and one Petry as executors. They conveyed lot B to one Oexle. The bank released it from the mortgage and loaned to Oexle $3,000 upon a mortgage executed by him on the same lot. He then conveyed lot B to Mrs. Thieme. She afterwards intermarried with one Bethon, and by subsequent conveyances the title to lot B, subject to the $3,000 mortgage, was vested in them as husband and wife. The two mortgages bore interest at the rate of seven per cent. In December, 1875, they were due and nothing had occurred to relieve the estate of the deceased from its liability to pay off the mortgage of $2,000 as one of its debts. Between December 1, 1875, and January 1, 1876, the executors applied to the plaintiffs to advance and loan upon the securities then held by the savings bank the sums of $2,000 and $3,000 for five years at six per cent instead of seven, at the same time agreeing to cause the mortgages to be assigned to them. They, relying on this assurance, advanced their money to the estate of Thieme, and the executors paid it over to the bank, but permitted the mortgages to be discharged of record, and subsequently delivered to the plaintiffs a bond executed by Charles Bethon and Margaretha Bethon, executors, etc., for the sum of $3,000, with a mortgage as collateral thereto executed in like manner upon lot A, and a bond executed by Margaretha Bethon and Charles Bethon for $2,000 with a mortgage collateral thereto upon lot B; and these bonds and mortgages were delivered to the plaintiffs in place of the bonds and mortgages held by the savings bank, without the knowledge or consent of the plaintiffs, who were ignorant of the true character of the papers so delivered to them until shortly before the commencement of the

action. And the court held that by the understanding between the executors and the plaintiffs the latter had a right to stand in the place of the bank and take the full benefit of this security, the principle invoked being that where one, at the instance of another, advances his money to redeem or even pay off a security in which that other has an interest, if necessary equity will imply an agreement that the security shall subsist for his use and it will be enforced.

Applying this rule to the case at bar, when Hofele requested the plaintiff to pay his debt to the American Exchange Bank and receive from the bank the security, the plaintiff was entitled to be subrogated to all the security as far as it advanced its money to pay Hofele's debt to the American Exchange Bank which such bank held. Part of that security was the representation made to it in respect to the certificate held by it.

The judgment should be reversed and a new trial ordered, with costs to appellant to abide event.

FOLLETT and PARKER, JJ., concurred.

Judgment reversed and a new trial ordered, with costs to appellant to abide event.