MYER HELLMAN and JOSEPH F. BLAUT, Partners under the Firm Name of HELLMAN & BLAUT, Plaintiffs, v. THE FORTY-SECOND STREET AND GRAND STREET FERRY RAILROAD COMPANY, Defendant.

*Principal and agent — liability of a corporation upon a spurious stock certificate issued by its officer.*

The rule which imposes a liability upon the principal for the unauthorized acts of his agent applies to a spurious, but apparently genuine, certificate of stock of a street railroad company, wrongfully issued by a person who was at the time secretary, treasurer and transfer agent of the company and invested with authority to sign, countersign and seal valid certificates of stock, and who, when he issued the certificate in question, was acting within the scope of his apparent authority.

MOTION by the defendant, The Forty-second Street and Grand Street Ferry Railroad Company, for a new trial, made upon exceptions ordered to be heard at the General Term in the first instance, upon the direction of a verdict for the plaintiffs at the New York Circuit on the 13th day of April, 1893.

This action was brought by the co-partnership firm of Hellman & Blaut to recover from the defendant $60,341.50, with interest from November 21, 1890, as indemnity for a forged stock certificate, of which the following is a copy :

" Capital Stock, $750,000.                    Shares, $100 Each.
        " No. 976.                              (Vignette).

" The Forty-second St. and Grand St. Ferry Railroad Company.
" City of New York.                              229 Shares.

    " This is to certify that F. W. Hofele is entitled to two hundred and twenty-nine shares of one hundred dollars each in the capital stock of the Forty-second Street and Grand Street Ferry Railroad Company, transferable only on the books of the company, by him or his attorney upon the surrender of this certificate, to be canceled, indorsed with the name of the party to whom a new certificate is to be issued for said stock, or any part thereof, and accompanied with a declaration of sale or transfer, setting forth the number of shares transferred, and the person to whom and the time when the same

are so transferred.   No certificate shall bind this company unless the same be signed by their president, and countersigned by their treasurer and transfer agent

        " In witness whereof, the said company have caused this cer-
            tificate to be .signed by their president, and to be counter-
[SEAL.]   signed by their treasurer and transfer agent, and sealed
            with their corporate seal, this third day of February,
            one thousand eight hundred and eighty-three."

"JOHN GREEN,                   CHAS. CURTISS,
    " *President.*                      *Treasurer.*

                                 " EBEN S. ALLEN,
                                  " *Transfer Agent.*"

Written across the face in red ink :

" No good.   C. P. Emmons, Transfer Agent.
" R. J. Jacobs, Treas."

It is alleged in the complaint and admitted by the answer that the defendant has for many years issued its .stock upon engraved certificates taken from its stock certificate book in a form approved by it, and with a blank form of transfer and power of attorney indorsed thereon, also approved by it.

It appeared upon the trial that the certificate in suit was one of twelve of those certificates signed in blank by John Green, a former president of the defendant company, sometime between 1876 and 1880, when he was to be absent from the city.   The certificates so signed by him were left in the charge of Charles Curtiss, then treas-urer of the company, for the purpose of making transfers during Mr. Green's absence, and were subsequently delivered to Eben S. Allen, then secretary and transfer agent of the company, who placed them in a private drawer in the safe to which no one but himself had access.

Mr. Green ceased to be president of the company in April, 1883, and died in 1887.   Mr. Curtiss became president in 1883, when Mr. Green retired, and at the same time Allen became treasurer in addition to the other offices then held by him.   In April, 1888, Allen became president of the company, Ralph J. Jacobs became treasurer, and Charles P. Emmons became secretary and transfer agent.   Mr. Curtiss died in August, 1888.

In March, 1888, Allen, then secretary, treasurer and transfer agent of the defendant, took the certificate here in question, filled it up in the name of F. W. Hofele for 229 shares, forged the name of Charles Curtiss as treasurer, signed his own name as transfer agent, dated it February 3, 1883, affixed the corporate seal, and delivered it to Hofele without consideration, for the purpose of procuring a loan for the benefit of Allen & Co., a co-partnership firm composed of Allen and himself.

On the 14th day of March, 1888, Hofele applied to the Columbia Bank in the city of New York, of which bank the plaintiff Blaut was then a director, for a loan of $13,000, offering as collateral security the above certificate. Before loaning Hofele any money, the bank, with the knowledge of the plaintiff Blaut, had one of its clerks take the supposed certificate to the office of the defendant and inquire whether it was genuine. At the defendant's office this clerk saw a person who claimed to be the secretary or treasurer of the defendant company, and was informed by him that the certificate was genuine. Upon the return of the clerk to the bank and his report to the cashier, the bank, with the knowledge of the plaintiff Blaut, loaned Hofele $13,000, for which Hofele gave his note and the forged certificate as collateral. This loan was subsequently increased upon the same collateral to $25,000, which was paid off on the 24th day of April, 1889, when the certificate was surrendered by the bank.

On the same day, the 24th of April, 1889, Hofele procured another loan upon his promissory note, with the forged certificate as collateral, from the First National Bank of Brooklyn, the amount upon this occasion being $30,000. On August 1, 1889, Hofele sold the certificate to the plaintiffs for $45,800, and paid off this loan. On August 5, 1889, the plaintiffs sold the certificate to George H. Prentiss & Co. for $47,650. The certificate was then presented at the office of the company for transfer by Prentiss & Co., and transfer refused upon the ground that it was forged and spurious. On or about August 26, 1889, Prentiss & Co. brought an action against the plaintiffs, alleging that the certificate was worthless and false in fact, and demanding a return of the money they had paid for it, and in consequence of this action the plaintiffs repurchased it from Prentiss & Co., paying the same price they had received for it.

On November 21, 1890, the plaintiffs in turn presented the cer-

tificate at the office of the defendant, and, offering to surrender the same, demanded the issue to them of a new certificate for the same number of shares, which was refused upon the ground that the certificate presented was forged and spurious.   Thereupon the plaintiffs caused this action to be instituted to recover the market value of 229 shares of defendant's stock, on the 21st day of November, 1890, with interest from that day.

*George Hoadley*, for the plaintiffs.

*F. H. Smith*, for the defendant.

VAN BRUNT, P. J. :

This action was brought to recover damages for refusal of the defendant to transfer certain stock.   The certificate which the plaintiffs offered to surrender upon such transfer was similar to the one involved in the action of The Mutual Life Ins. Co. against this same defendant, in which case it was held that the defendant was liable under the rule which imposes a liability upon the principal for the unauthorized acts of his agent ; that Allen, who issued the certificate, was at the time secretary, treasurer and transfer agent of the defendant, and invested with authority to sign, countersign and seal valid certificates of stock, and when he issued the certificate in question was acting within the scope of his apparent authority, and that the issuance of the certificates in due form was a representation by him that all the conditions had been complied with, and the facts existed upon which his right to act depended.

It follows, therefore, that the exceptions should be overruled and judgment ordered upon the verdict for the plaintiffs, with costs.

FOLLETT and PARKER, JJ., concurred.

Exceptions overruled and judgment ordered upon the verdict for the plaintiffs, with costs.