(7 App. Div. 366)

ROCHESTER & KETTLE FALLS LAND CO. v. ROE.

(Supreme Court, Appellate Division, Fourth Department. June 17, 1896.)

CORPORATIONS—ACTION FOR STOCK ASSESSMENTS—EVIDENCE.

Defendant in an action to recover an assessment on shares of stock issued by plaintiff to one R., and by him assigned to defendant, alleged as a defense that R. represented that the stock was fully paid, and that no further assessments should be made thereon; that defendant then inquired of plaintiff's officers as to whether any further payments were due on the stock, at the same time informing them that he contemplated purchasing it; that the officers replied that the shares were paid for in full, and that no further calls or demands would be made thereon; and that, relying on said statements and representations, defendant purchased the shares, with the understanding that they had been paid for in full. *Held*, that it was competent for defendant to testify as to the statements made by R., and the purpose for which he interviewed plaintiff's officers, as bearing on the question of whether he relied on the assumption that the stock was paid up when he purchased it.

Appeal from judgment on report of referee.

Action by Rochester & Kettle Falls Land Company against John O. Roe. Judgment was rendered in favor of plaintiff for $145.12, together with the costs of the action, and defendant appeals. Reversed.

The complaint alleges that one Reynolds became the owner of 10 shares of the assessable stock of the plaintiff by subscription therefor, and that Reynolds transferred the stock to the defendant, and the same was transferred upon the books of the plaintiff, and a certificate therefor issued and delivered by the plaintiff to the defendant. The complaint does not allege any formal subscription by Reynolds, nor any formal written promise executed by the defendant to pay for the stock. The answer admits that Reynolds transferred 10 shares of the stock to the defendant upon the books of the plaintiff, "and that there had been paid to the plaintiff therefor, by said J. T. Reynolds, the sum of $30 per share and no more." The answer of the defendant alleges that he purchased said 10 shares of stock of said Reynolds "upon the representation, by said Reynolds and his agent, that said stock was paid for in full, and that no further assessments or demands would be made thereon; that, before making said purchase, this defendant inquired of the officers and directors of said plaintiff, at its office in the Wilder building, in the city of

Rochester, N. Y., as to whether any further payments were due on said stock, at the same time informing said officers and directors that defendant contemplated purchasing said stock; that, in reply to said inquiries, said officers and directors stated to this defendant that said shares of stock had been paid for in full, and that no further calls or demands would or could be made thereon; that, relying upon said statements and representations, this defendant purchased said shares of stock with the understanding that the stock had been paid for in full, and was therefore free from calls or demands, and this defendant did not understand the term 'assessable,' printed upon said shares of stock, to mean that the stock had not been paid for in full."

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Charles Roe, for appellant.

James G. Greene, for respondent.

HARDIN, P. J.   In Seymour v. Sturgess, 26 N. Y. 141, Allen, J., in speaking of the liability of a stockholder upon an original subscription, or as transferee of stock, said, viz.:

"Without a promise, proved in one way or the other, a party cannot be charged in assumpsit. If the circumstances negative all presumption of a promise, there is no rule of law applicable to any class of cases which compels courts to disregard the circumstances, and adjudge a promise to have been made against the evidence. In the class of cases referred to [actions upon unpaid subscriptions for stock and against assignees of stock not fully paid for], courts have had respect to the terms of the contract and certificate, and the circumstances of the case, leaving it for other tribunals, in applying the same principles, to observe and give effect to different circumstances as they may arise, and declare what, in each case, is the contract or agreement of the parties. The company was here incorporated, not to accomplish a great public object, but for the immediate profit and advantage of its projectors, and to enable them to dispose of their land and mines, and with a view to a development of their resources by those who should associate together in the corporation."

In that case no formal subscription was made for the stock. None is found in the appeal book before us.  In the course of the opinion in that case it is further said:

"But if there be no such agreement, the sole remedy for the corporation is by the sale of the shares of the delinquent members,"—citing numerous cases.

And the learned judge further added:

"There was no express contract by the defendant Sturgess, or by any one to whose rights and liabilities he has succeeded, to take and pay for the stock, and no implied contract or promise is made out by the evidence. On the contrary, every circumstance shows that no such promise was made, or intended to be made, or understood to have been made; and it follows that there is no personal liability which can be enforced by the corporation, or in behalf of and for the benefit of a creditor of the corporation."

That case was referred to with approval in Wintringham v. Rosenthal, 25 Hun, 580, in which case it appeared that Brown had subscribed for 500 shares of the capital stock of a bank, and transferred 50 shares of them to the defendant, and, in an action brought by the receiver of the bank to recover the unpaid calls upon the stock, it was held that the defendant was not liable for the same. And near the close of the opinion in that case Barnard, P. J., said:

"It is only where there is an express agreement to pay that an action will lie by the corporation, 'but if there be no such agreement, the sole remedy for the corporation is by the sale of the shares of the delinquent members.'"

In Billings v. Robinson, 94 N. Y. 415, near the close of the opinion, Finch, J., said:

"It was said in Seymour v. Sturgess, 26 N. Y. 141, that in actions upon unpaid subscriptions for stock, and against assignees of stock not fully paid for, courts have had respect to the terms of the contract and certificate, and the circumstances of the case."

In Fifth Ave. Bank v. Forty-Second St. & G. St. F. R. Co., 137 N. Y. 231, 33 N. E. 378, a secretary and treasurer of a company forged certain certificates, and caused the same to be issued against the corporation in which he was acting with apparent authority, and innocent parties relied upon the representations made by him and the instruments issued, and the corporation of which he was an officer was held to be liable. That case is commented upon extensively by Van Brunt, P. J., in Mutual Life Ins. Co. v. Forty-Second St. & G. St. F. R. Co., 74 Hun, 509, 26 N. Y. Supp. 547.

To support the defense interposed by the defendant, he was sworn as a witness, and he was interrogated as to what Reynolds said at the time he (the defendant) purchased the stock of him, and after the referee had excluded the conversation held with Reynolds, in which the defendant claimed that he had represented the stock was fully paid up, he testified that, before purchasing the stock, he had a talk with the directors or managers of the company about the stock. He says:

"I had a talk at that time before I purchased the stock of Mr. Reynolds. I talked with Mr. Aris and with Mr. Ranger at the company's office."

When asked for what purpose, an objection was interposed by the plaintiff on the ground that it was incompetent, and the objection was sustained, and an exception was taken. Thereupon the further question was propounded to the witness: "Q. What office did Mr. Aris hold at that time?" This was objected to by the plaintiff's counsel, and thereupon the following questions were propounded:

"Q. Did you know at that time that Mr. Aris was an officer in the company? A. I do not know whether I knew it before or not. I went there, and inquired if Mr. Aris and Mr. Ranger were officers of the company. Mr. Aris stated that he was the manager. Q. What was your conversation with Mr. Aris about the stock? A. I inquired as to the value of the stock and the advisability of purchasing stock of the company. Q. That was with Mr. Aris? A. Yes. Q. What did he say? A. He said that the stock was valuable stock, and advised me to buy it at a reasonable figure. I inquired of him about the liability of the stock, and as to the value of the stock, and he said it was valuable stock, and he said that the stock was fully paid. He told me that the stock of the company that had been issued was paid up stock."

The witness stated that, at the time he made the inquiries of Aris, he did not have the certificates, and on being interrogated, in the course of his cross-examination, he says:

"He [Aris] said that it was paid-up stock. * * * I went to Mr. Aris as an officer of the company. I went to the company, and found Mr. Aris was the officer. * * * I was led to believe, by the officers of the company, that the stock was fully paid up, and I did not examine the stock critically."

Subsequently Ranger was called as a witness for the plaintiff, and he testified that he—

"Never told the defendant that all the stock of the Kettle Falls Land Company was full-paid stock.  Mr. Aris also had his headquarters at the office of the company.  I never heard Mr. Aris tell defendant that the stock was full paid."

Aris was not called as a witness, and no reason appears in the appeal book why his testimony was not offered by the plaintiff. In the certificate of incorporation both Aris and Ranger appear as incorporators, and as directors named in the certificate to manage the affairs for the first year, and they executed the certificate of incorporation on the 22d of September, 1890.

If the witness Roe had been permitted to testify that Reynolds, at the time of the negotiation of the stock, represented to him that it was fully paid-up stock, that fact would have borne to some extent upon the question of whether he relied upon the assumption that it was paid-up stock when he purchased the same, and in connection with the evidence that he did give would have been corroborative of the position he took that the defendant's officers represented to him that the stock was paid up; and in furtherance of that same idea the referee might properly have allowed the witness to answer the question for what purpose he went to the company's office to inquire about the stock.   The important inquiry was whether the defendant ever agreed to purchase any shares other than those that were fully paid up.   If the referee, after receiving all the evidence offered, had given full force and effect to that which bore upon the question, he might have found that the defendant inquired of the corporation, and was by it informed that the stock was paid up, and that he relied upon such information, and therefore ought not to be held liable as having made either an implied or express promise to pay future calls upon the stock. Cook, Stock, Stockh. & Corp. Law, § 418;  Van Cott v. Van Brunt, 82 N. Y. 535;  Barr v. Railroad Co., 125 N. Y. 263, 26 N. E. 145; Holmes v. Willard, 125 N. Y. 75, 80, 25 N. E. 1083.

There does not seem to be any laches on the part of the defendant that would prevent him from availing himself of the doctrine of estoppel if the facts are as claimed in his testimony.   This case differs from Banking Co. v. Duncan, 86 N. Y. 221.

Upon another trial, the facts in respect to the representations made to the defendant by Reynolds and by the plaintiff's officers may more fully appear, and a more intelligent conclusion be formed upon the evidence relating to the question of the representations made by the plaintiff's officers to the defendant before he became a purchaser of the stock.   We are therefore of the opinion that, under the rule laid down in Guernsey v. Miller, 80 N. Y. 181, we should order a new trial, instead of dismissing the plaintiff's complaint.   See Foot v. Insurance Co., 61 N. Y. 571.

The foregoing views lead to the conclusion that the judgment should be reversed, and a new trial ordered, with costs to abide the event.

Judgment reversed, and a new trial ordered, with costs to abide the event.   All concur.